# 23-1096-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

PREBLE-RISH HAITI, S.A.,

*Petitioner-Appellee,*

— v. —

REPUBLIC OF HAITI,

*Respondent-Appellant,*

BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE
AU DÉVELOPPEMENT,

*Respondent.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## RESPONDENT-APPELLANT

BERTRAND MADSEN
MADSEN LAW P.C.
1115 Broadway, 11th Floor
New York, New York 10010
(212) 346-7744

ELIZABETH WOLSTEIN
SAMUEL L. BUTT
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, New York 10004
(212) 344-5400

*Attorneys for Respondent-Appellant*

CP COUNSEL PRESS     (800) 4-APPEAL • (324225)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ............................................................ 1

JURISDICTIONAL STATEMENT ....................................................... 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 4

STATEMENT OF THE CASE.............................................................. 6

    A.    The Contracts Between Preble-Rish And BMPAD ............................ 6

        1.    The Contract Subject Matter And Parties ................................. 6

        2.    The Arbitration Clause........................................................... 6

    B.    The Arbitration Demand And Harris Bricken's Petition To Stay In State Court .............................................................................. 7

    C.    The Partial Final Arbitration Award And Preble-Rish's Petition To Confirm It ................................................................................ 9

    D.    The Arbitration Hearing And The Final Arbitration Award ............... 11

    E.    The Petition To Confirm In This Action And The Republic's Motion To Dismiss Or Vacate The Arbitration Award .................................. 13

    F.    The District Court Decision ................................................................ 14

SUMMARY OF THE ARGUMENT ..................................................... 17

STANDARD OF REVIEW ................................................................... 19

ARGUMENT ...................................................................................... 20

I.    THE DISTRICT COURT SHOULD HAVE DISMISSED THE PETITION FOR LACK OF SUBJECT MATTER JURISDICTION .............................. 20

    A.    Res Judicata Does Not Bar The Republic's Motion To Dismiss For Lack of Subject Matter Jurisdiction_____ . 20

    B.    Collateral Estoppel Does Not Bar The Republic's Motion To Dismiss For Lack of Subject Matter Jurisdiction _____ .............. 23

        1.    Whether An Arbitration Agreement Existed Between Preble-Rish And The Republic Was Not Actually Litigated In The Stay Petition .............................................................................. 24

        2.    The Republic Lacked A Full And Fair Opportunity To Litigate The Existence Of An Arbitration Agreement ............................ 24

C.    Absent Any Preclusive Effect Of The State Court Stay Denial Order, The District Court Erred In Concluding It Had Subject Matter Jurisdiction, Since No Exception To Immunity Applies ....................28

    1.    The FSIA Is The Sole Basis For Establishing Subject-Matter Jurisdiction Over The Republic ..................................................28

        a)    The Arbitration Exception Does Not Apply ......................29

        b)    The Waiver Exception Does Not Apply ............................31

II.    THE DISTRICT COURT SHOULD HAVE DISMISSED THE PETITION FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION ...............................................................................................31

   A.    Strict Adherence To The FSIA's Service Requirements Is Required..31

   B.    The District Court Erred In Ruling That The Arbitration Agreement Contains A Special Arrangement For Service Of Process...................34

   C.    There Is No Alternative Basis For Finding Proper Service ................35

   D.    Absent Either Of Proper Service Or Subject Matter Jurisdiction, The District Could Lacked Personal Jurisdiction Over The Republic ........37

III.    IN THE ALTERNATIVE, THE DISTRICT COURT SHOULD HAVE VACATED THE FINAL AWARD AS TO THE REPUBLIC......................38

   A.    Legal Framework And Standards Governing Vacatur Of The Final Award ................................................................................................38

   B.    The Arbitrators Exceeded Their Powers In Ruling That Preble-Rish's Dispute With BMPAD Was Arbitrable Against The Republic As A Non-Signatory To The Contracts ........................................................39

    1.    The Republic's Arbitrability Challenge Is Not Barred By Res Judicata...................................................................................39

    2.    The Arbitrators Had No Power To Determine The Question Of Arbitrability As Against The Republic .....................................44

   C.    The District Court Should Have Vacated The Final Award And Conducted An Independent Review To Determine Whether The Dispute Is Arbitrable Against The Republic, And The District Court Should Do So On Remand, Or This Court May Itself Decide The Question...............................................................................................47

    1.    The Republic Did Not Waive Its Arbitrability Challenge .........49

a)    The Republic Is Not Bound By The Arguments Or Conduct Of Harris Bricken, Which Had Neither Actual Nor Apparent Authority To Represent The Republic ..............49

b)    Even Assuming It Were Bound By Harris Bricken's Conduct, The Republic Did Not Waive Its Arbitrability Challenge ...........................................................................50

2.    Preble-Rish Did Not Establish That BMPAD Is An Alter Ego Of The Republic .............................................................................53

3.    Preble-Rish Did Not Establish That The Republic Is Bound To Arbitrate On An Agency Theory ................................................58

IV.    THE DISTRICT COURT ERRED IN CONFIRMING THE FINAL AWARD BECAUSE THE GROUNDS FOR DISMISSAL AND VACATUR ALSO PRECLUDE CONFIRMATION ....................................................................59

CONCLUSION ........................................................................61

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                    **Page(s)**

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*,
600 F.3d 171 (2d Cir. 2010) ................................................................ 29

*Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design Off.*,
164 F. Supp. 2d 397 (S.D.N.Y. 2001) ................................................ 34

*Arch Trading Corp. v. Republic of Ecuador*,
839 F.3d 193 (2d Cir. 2016) ........................................................ 28, 55

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022) ......................................................................... 28

*Bd. Of Educ. Of Manhasset Union Free Sch. Dist. v. New York State Hum. Rts. Appeal Bd.*,
106 A.D.2d 364 (2d Dep't 1984) ......................................................... 25

*Beharry v. M.T.A. New York City Transit Auth.*,
No. 96-CV-1203 (FB), 1999 WL 151671 (E.D.N.Y. Mar. 17, 1999) *aff'd*, 242 F.3d 364 (2d Cir. 2000) .................................................................... 23

*Bergesen v. Joseph Muller Corp.*,
710 F.2d 928 (2d Cir. 1983) ............................................................... 38

*Berkowitz v. Republic of Costa Rica*,
288 F. Supp. 3d 166 (D.D.C. 2018) .................................................... 34

*Buechel v. Bain*,
97 N.Y.2d 295, 766 N.E.2d 914 (2001) .............................................. 23

*Cabiri v. Government of Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999) ............................................................... 31

*Chiejina v. Fed. Republic of Nigeria*,
No. CV 21-2241 (RJL), 2022 WL 3646377 (D.D.C. Aug. 24, 2022) ................ 35

*City of Yonkers v. Police Benevolent Ass'n of City of Yonkers*,
210 A.D.3d 765 (2d Dep't 2022) ......................................................... 43

*Cobec Braz. Trading & Warehousing Corp. of U.S. v. Isbrandtsen*,
  524 F. Supp. 7 (S.D.N.Y. 1980) ............................................................. 52

*Com. & Indus. Ins. Co. v. Nester*,
  90 N.Y.2d 255 (1997) ............................................................................ 40

*Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.*,
  49 F.4th 802 (2d Cir. 2022) ................................................................. 35

*D'Arata v. New York Cent. Mut. Fire Ins. Co.*,
  76 N.Y.2d 659 (1990) ............................................................................ 24

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308 (2d Cir. 2021) ................................................................... 44

*Dedon GmbH v. Janus et Cie*,
  411 F. App'x. 361 (2d Cir. 2011) ........................................................ 50

*DRC, Inc. v. Republic of Hond.*,
  71 F. Supp. 3d 201 (D.D.C. 2014) ........................................................ 56

*EM Ltd. v. Banco Cent. de la República Arg.*,
  800 F.3d 78 (2d Cir. 2015) ................................................... 53, 54, 55, 56

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  40 F.4th 56 (2d Cir. 2022) ........................................................... 53, 58

*Fennell v. TLB Kent Co.*,
  865 F.2d 498 (2d Cir. 1989) ................................................................. 26

*Filler v. Hanvit Bank*,
  378 F.3d 213 (2d Cir. 2004) ................................................................. 28

*First Nat'l City Bank v. Banco Para El Comercia Exterior De Cuba*,
  462 U.S. 611 (1983) .............................................................................. 53

*First Options of Chicago v. Kaplan*,
  514 U.S. 938 (1995) ................................................................. 45, 50, 52

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ............................................................. *passim*

*Gilberg v. Barbieri*,
53 N.Y.2d 285 (1981) ............................................................. 25

*Green Door Realty Corp. v. TIG Ins. Co.*,
329 F.3d 282 (2d Cir. 2003) ................................................. 26

*Grieve v. Tamerin*,
269 F.3d 149 (2d Cir. 2001) ................................................. 23

*Gvozdenovic v. United Air Lines, Inc.*,
933 F.2d 1100 (2d Cir. 1991) ............................................... 51

*Hilaturas Miel, S.L. v. Republic of Iraq*,
573 F. Supp. 2d 781 (S.D.N.Y. 2008) ................................... 33

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ................................................................ 44

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................... 59

*In re Petition of Transrol Navegaicao S.A.*,
782 F. Supp. 848 (S.D.N.Y. 1991) ........................................ 51

*Intercontinental Packaging Co. v. China Nat. Cereals, Oils & Foodstuff Imp. & Exp. Corp., Shanghai Foodstuffs Branch*,
172 A.D.2d 224 (1st Dep't 1991) ......................................... 43

*iPayment, Inc. v. 1st Americard, Inc.*,
No. 15 Civ. 1904 (AT), 2016 WL 1544736 (S.D.N.Y. Mar. 25, 2016) .......... 46, 50

*ISC Holding AG v. Nobel Biocare Fin. AG*,
688 F.3d 98 (2d Cir. 2012) ................................................... 32

*Jacubovich v. State of Isr.*,
816 F. App'x. 505 (2d Cir. 2020) .......................................... 31

*Josey v. Goord*,
9 N.Y.3d 386 (2007) ............................................................. 20

*Kaplan v. First Options of Chicago, Inc.*,
19 F.3d 1503 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995) ..................... 45

*Kato v. Ishihara*,
    360 F.3d 106 (2d Cir. 2004) ................................................................. 28

*Katz v. Feinberg*,
    290 F.3d 95 (2d Cir. 2002) ............................................................. 47, 48

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013) ................................................................. 19

*Kosakow v. New Rochelle Radiology Assocs.*,
    274 F.3d 706 (2d Cir. 2001) ............................................................... 25

*Lovati v. Bolivarian Republic of Venez.*,
    No. 19-CV-4793 (ALC), 2020 WL 6647423 (S.D.N.Y. Nov. 11, 2020) ............. 33

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
    268 F.3d 58 (2d Cir. 2001) ................................................................. 48

*Marthan Equities, Inc. v. P. M. Realty Mgmt. Corp.*,
    216 A.D.2d 180 (1st Dep't 1995) ......................................................... 43

*Matter of Blamowski (Munson Transp., Inc.)*,
    91 N.Y.2d 190 (1997) ....................................................................... 42

*Micula v. Government of Rom.*,
    714 F. App'x. 18 (2d Cir. 2017) .......................................................... 37

*Mobil Cerro Negro, Ltd. v. Bolivarian Repub. Of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) ................................................................. 37

*Mony Credit Corp. v. Colt Container Servs., Inc.*,
    169 A.D.2d 760, 565 N.Y.S.2d 126 (1st Dep't 1991) ............................... 21

*Morgan v. Nikko Sec. Co. Int'l*, 691 F. Supp. 792 (S.D.N.Y. 1988) ................. 43, 44

*Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*,
    140 F.3d 459 (2d Cir. 1998) ........................................................... 50, 52

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys., LLC*,
    289 F. Supp. 3d 457 (S.D.N.Y. 2018) ................................................... 48

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ....................................................................... 21

*Pablo Star Ltd. v. Welsh Gov't*,
  170 F. Supp. 3d 597 (S.D.N.Y. 2016) ................................................................. 36

*Parson Steel Inc. v. First Alabama Bank*,
  474 U.S. 518 (1986) ............................................................................................ 20

*Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd.*,
  No. 07 Civ. 10649 (JGK), 2008 WL 463720 (S.D.N.Y. Feb. 19, 2008)...45, 49, 51

*Potter v. Motor Vehicle Accident Indemnification Corp.*,
  73 A.D.2d 787 (4th Dep't 1979) .......................................................................... 43

*Przewozman v. Islamic Republic of Iran*,
  628 F. Supp. 3d 307 (D.D.C. 2022) ..........................................................33, 36, 37

*Reed & Martin, Inc. v. Westinghouse Elec. Corp.*,
  439 F.2d 1268 (2d Cir. 1971) .............................................................................. 32

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
  235 F.3d 738 (2d Cir. 2000) ................................................................................ 37

*Reo Garment, Inc. v. Jason Corp.*,
  6 A.D.2d 401 (1st Dep't 1958) ............................................................................ 44

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019) ........................................................................................ 32

*Rojas v. Romanoff*,
  186 A.D.3d 103 (1st Dep't 2020) ........................................................................ 20

*Ryan v. New York Tel. Co.*,
  62 N.Y.2d 494 (1984) .......................................................................................... 23

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ............................................................................................ 28

*Seramur v. Saudi Arabian Airlines*,
  934 F. Supp. 48 (E.D.N.Y. 1996) ........................................................................ 36

*Silverman v. Benmor Coats, Inc.*,
  61 N.Y.2d 299 (1984) .......................................................................................... 42

*Smiga v. Dean Witter Reynolds, Inc.*,
    766 F.2d 698 (2d Cir. 1985) ...................................................................52

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) ...................................................................51

*Technologists, Inc. v. Mir's Ltd.*,
    725 F. Supp. 2d 120 (D.D.C. 2010) .......................................................32

*TIG Insurance Co. v. Republic of Argentina*,
    No. 18-mc-00129 (DLF), 2022 WL 1154749 (D.D.C. Apr. 18, 2022)...........29, 30

*TransAmerica Leasing, Inc. v. La Republica de Venez.*,
    200 F.3d 843 (D.C. Cir. 2000) ...............................................................56

*UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*,
    159 A.D.3d 512 (1st Dep't 2018) ..........................................................21

*Velez v. Reynolds*,
    325 F. Supp. 2d 293 (S.D.N.Y. 2004) ....................................................25

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,
    717 F.3d 322 (2d Cir. 2013) ..................................................................59

*Walters v. Indus. & Commer. Bank of China, Ltd.*,
    651 F.3d 280 (2d Cir. 2011) ..................................................................19

*Yusef Ahmed Alghanim, W.L.L. & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) ...............................................................38, 39

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
    811 F.3d 584 (2d Cir. 2016) ..................................................................39

**Statutes**

9 U.S.C. § 9...........................................................................................32

9 U.S.C. § 10.....................................................................................32, 40

9 U.S.C. § 10(a)(4).............................................................................39, 44

28 U.S.C. § 1291 ....................................................................................3

28 U.S.C. §§ 1602-1611 ..........................................................................3

ix

28 U.S.C. § 1604 ................................................................. 28

28 U.S.C. §§1605-1607 ...................................................... 28

28 U.S.C. § 1605(a)(1) ........................................................ 31

28 U.S.C. § 1605(a)(6) ............................................... 28, 29, 30

28 U.S.C. § 1608 ........................................................... 32, 34

28 U.S.C. § 1608(a) ................................................... 32, 33, 36

28 U.S.C. § 1608(a)(1) ................................................... *passim*

28 U.S.C. § 1608(a)(2) ........................................................ 35

28 U.S.C. § 1608(a)(3) ........................................................ 36

28 U.S.C. § 1608(a)(4) ........................................................ 36

28 U.S.C. § 1608(b) ........................................................... 37

CPLR 7503 .............................................................. *passim*

CPLR 7503(b) ................................................................... 8

CPLR 7503(c) ......................................................... *passim*

CPLR 7511 ................................................................. 40, 41

CPLR 7511(b) .............................................................. 2, 40

CPLR 7511(b)(1) ............................................................. 40

CPLR 7511(b)(2) ......................................................... 40, 42

CPLR 7511(b)(2)(ii) ......................................................... 40

## Rules

Fed. R. Civ. P. 4 ............................................................... 32

Fed. R. Civ. P. 4(j) ........................................................... 32

**Other Authorities**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
21 U.S.T. 2517 (June 10, 1958)..............................................................36

## **PRELIMINARY STATEMENT**

This case involves a $31 million judgment against the sovereign nation of Haiti based on an arbitration award—yet it is undisputed that the Republic of Haiti (the "Republic") is not a party or signatory to the arbitration agreement.  As a result, no exception to the Republic's sovereign immunity applies and the petition to confirm the award should have been dismissed as against the Republic for lack of subject matter jurisdiction.

Instead, the district court declined to consider the Republic's subject matter jurisdiction defense, holding that it was barred by res judicata based on an earlier state court order denying a petition to stay the arbitration.  While the law firm that litigated the stay petition lacked authority to represent the Republic—a fact the firm later publicly conceded—the district court's error is independent of that.  Res judicata is inapplicable because the Republic's federal subject matter jurisdiction defense could not have been raised in the state court petition to stay arbitration, nor did the subject matter jurisdiction defense arise out of the same transaction as the petition to stay the arbitration. The absence of subject matter jurisdiction also meant the district court lacked personal jurisdiction under the Foreign Sovereign Immunities Act, which was also absent for the independent reason that Preble-Rish did not effectuate service as required by the Act.

The district court relied on the same misunderstanding of preclusion doctrines in refusing to consider the Republic's motion, in the alternative, to vacate the

arbitration award. The court held that the state court order denying the stay petition barred the Republic from challenging arbitrability as against the Republic as a non-signatory to the arbitration agreement. The applicable state rules of preclusion expressly hold otherwise, however. Under the interlocking provisions of CPLR 7511(b) and 7503, a litigant in the Republic's position—one that has not been served with a compliant arbitration demand under CPLR 7503(c)—may challenge arbitrability on a motion to vacate. On the merits, arbitrability was a question for the court, not the arbitrators, and Preble-Rish failed to produce any evidence to support its theories of arbitrability against non-signatories.

Accordingly, the Court should reverse the district court's order, dismiss the petition, or, in the alternative, vacate the arbitration award, and vacate the judgment.

## JURISDICTIONAL STATEMENT

Respondent-Appellant Republic of Haiti notes that its appeal concerns the district court's subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), and thus disputes the existence of subject matter jurisdiction.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, because the Republic appeals from a final judgment and decision of the district court, which granted Petitioner-Appellee Preble-Rish, S.A.'s ("Preble-Rish") petition to confirm an arbitral award, and denied the Republic's motion to dismiss for lack of subject matter jurisdiction and on other grounds, or, in the alternative, to vacate the arbitral award. This appeal is thus from a final judgment that disposes of all parties' claims, which also brings up for review all prior orders.

This appeal is timely. The final judgment ("Final Judgment") was entered on July 19, 2023, SPA-27-28, and the Republic timely filed its Notice of Appeal on July 28, 2023. JA-892.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Is a party who challenges subject matter jurisdiction in response to a petition to confirm an arbitration award precluded from arguing the federal court lacks subject matter jurisdiction based on a prior New York state court's order denying a petition to stay the arbitration, where the challenge to federal subject matter jurisdiction arises from a different transaction and could not have been raised in the state court proceeding?

The district court incorrectly answered yes.

2.     May a court exercise subject matter jurisdiction under the FSIA's arbitration exception where the arbitration agreement was not made by the foreign sovereign?

The district court incorrectly answered yes.

3.     Must a motion to dismiss a petition to confirm an arbitration award against a foreign sovereign be granted for lack of service and/or personal jurisdiction, where there was no "special arrangement" for service on the sovereign, 28 U.S.C. § 1608(a)(1), and proper service was not made under any of the other service methods permissible under the FSIA?

The district court incorrectly answered no.

4.     Can the Republic be precluded, by a New York state court order denying a petition to stay arbitration, from later challenging arbitrability on a motion

to vacate where New York rules of preclusion would not bar such a challenge on a motion to vacate?

The district court incorrectly answered yes.

5.     Where there is no arbitration agreement between Preble-Rish and the Republic, did the arbitrators exceed their power by taking jurisdiction to decide whether Preble-Rish's dispute is arbitrable against the Republic?

The district court erroneously declined to address the question on the merits.

6.     Where there is no arbitration agreement between Preble-Rish and the Republic, must the district court conduct an independent review of whether Preble-Rish's dispute is arbitrable against the Republic?

The district court erroneously declined to address the question on the merits.

## STATEMENT OF THE CASE

### A. The Contracts Between Preble-Rish And BMPAD

#### 1. The Contract Subject Matter And Parties

The underlying dispute arises under three contracts between Preble-Rish and

Respondent Bureau de Monétisation des Programmes d'Aide Au Développement

("BMPAD"), an independent and autonomous government agency of Haiti. *See*

District Court's Opinion and Order dated June 29, 2023 (the "Order"), SPA-2-3.

Under the three contracts (collectively, the "Contracts"), Preble-Rish agreed to

provide BMPAD with deliveries of diesel fuel, jet fuel, and gasoline over a period of

six months. *Id*. The only signatories to the Contracts were Preble-Rish and

BMPAD; **the Republic was neither a party nor a signatory** to the Contracts.

SPA-2.

#### 2. The Arbitration Clause

Each of the three Contracts includes "an identical arbitration clause" for

resolution of disputes between Preble-Rish and BMPAD (the "Arbitration Clause"),

which states in relevant part:

Article 20. ARBITRATION AND LEGISLATION

In the event of a dispute between the Buyer [BMPAD] and Seller
[Preble-Rish] under this Contract, the dispute shall be submitted by
either party to arbitration in New York before three arbitrators. The
Party initiating the arbitration shall provide written notice of its
intention to submit the matter to arbitration. . . . The decision of the
arbitrators shall be final, conclusive and binding on all Parties.

6

Judgment upon such award may be entered in any court of competent jurisdiction. . . .

SPA-3.

### B.     The Arbitration Demand And Harris Bricken's Petition To Stay In State Court

On November 20, 2020, Preble-Rish issued a Notice Demanding Arbitration "under the three fuel oil contracts." SPA-3 (the "Arbitration Demand"). The Arbitration Demand was addressed to BMPAD only, not to the Republic, was sent by e-mail to BMPAD's Managing Director, Mr. Fils Aimé Saint Fleur, at his official governmental email addresses, and claimed to demand arbitration against "the Republic, by and through its agent [BMPAD]." JA-470. The Arbitration Demand included as a "cc" Michel Patrick Boisvert, Haiti's Minister of Economy and Finance, at a non-governmental Yahoo address. JA-472. The Arbitration Demand did not contain the warning specified in CPLR 7503(c) "stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made." JA-470-472.

In a December 4, 2020 letter, a lawyer with Harris Bricken Sliwoski LLP ("Harris Bricken") made contact with the arbitrators. The letter identified Harris Bricken as counsel for the "Government of Haiti" and BMPAD and objected to the arbitration. SPA-4. Harris Bricken's claim that it was representing the Republic was unauthorized and unknown to the Republic. JA-488-489. The Republic only learned

7

of Harris Bricken's false assertion that it was representing the Republic in or around February 2022. JA-488. Harris Bricken has conceded in a letter to this Court that it never had authority to represent the Republic. JA-814.

Shortly thereafter, on December 22, 2020, Harris Bricken filed a petition in New York state court to stay the arbitration pursuant to CPLR 7503(b) ("Stay Petition"). SPA-5. The case was assigned to Justice Andrew Borrok. The Stay Petition, purportedly made on behalf of "Petitioners, REPUBLIC OF HAITI ('ROH'), BUREAU DE MONÉTISATION DE [sic] PROGRAMMES D'AIDE AU DÉVELOPPEMENT ('BMPAD')", argued that (1) the Arbitration Demand was procedurally deficient because it had not been properly served under New York law or translated to French and Haitian Creole, and that (2) the Arbitration Clause was invalid under Haitian law. JA-778-80. The Stay Petition did not argue the Republic was not a party to the Contracts. SPA-5-6.

On September 27, 2021, Justice Borrok issued an order denying the Stay Petition and granting Preble-Rish's cross-motion to compel arbitration (the "State Court Stay Denial Order"), concluding that "'petitioners fail[ed] to establish that the arbitration provisions are illegal under Haitian law.'" SPA-6. Harris Bricken appealed the denial of the stay to the First Department, which affirmed the State Court Denial Order. SPA-17.

8

## C. The Partial Final Arbitration Award And Preble-Rish's Petition To Confirm It

Back in arbitration, Harris Bricken continued to lodge objections to the panel's jurisdiction. In addition to its December 4, 2020 letter, Harris Bricken raised jurisdictional objections in pleadings dated March 27, 2021, April 23, 2021, and October 26, 2021, and in a June 2, 2021 email. JA-271, 278, 282, 316, 604-605, 609. In none of these submissions did Harris Bricken argue that the Republic was not a signatory to the Contracts.

On August 6, 2021, the panel issued a "partial final award" in the amount of $23,043,429.79 (the "Partial Award"), as "pre-award security" in favor of Preble-Rish. The Partial Award stated that it was issued against "BMPAD," a defined term the arbitrators created to refer to "Respondent [*singular*], Republic of Haiti, Bureau de Monétisation de[s] Programmes d'Aide au Développement." JA-277, 306. The arbitrators noted in a footnote that during the proceedings, "the Respondent," singular, has also been "identified by the acronyms 'ROH' (Republic of Haiti) and 'GOH' (Government of Haiti)." JA-277. The Partial Award described BMPAD as "an agency of the government of Haiti," and ordered "BMPAD" to make a $23,043,429.79 deposit in an escrow account to be established by the parties. JA-288, 306.

On August 9, 2021, Preble-Rish filed a petition in the Southern District of New York to confirm the Partial Award. *See* SDNY Docket Sheet in *Preble-Rish*

9

*Haiti v. Republic of Haiti, Bureau de Monétisation de Programmes D'Aide Au Développement*, SDNY Docket No. 21-6704, at ECF Doc. 1. Although the Partial Award was only against BMPAD, as defined by the arbitrators to mean only the Haitian government agency that was Preble-Rish's sole counterparty on the Contracts, the Petition claimed that it was being brought against BMPAD and the Republic. SDNY Case No. 21-cv-6704, ECF Doc. 1, at 1.

On January 26, 2022, the district court issued an Opinion and Order granting the petition against "BMPAD." *Id*., at ECF Doc. 48, at 1. At that point, the docket did not reflect service of the Petition on the Republic, and the Republic had not appeared. *See generally* Docket in SDNY Case No. 21-cv-6704, ECF filings through January 26, 2022.

On January 26, 2022, the SDNY Clerk entered a Judgment "as against BMPAD." SDNY Case No. 21-cv-6704, ECF Doc. 49. The same day, Preble-Rish filed a letter asking the district court to clarify, and direct the Clerk to amend, its judgment to say that it was against BMPAD *and* the Republic. *Id*., at ECF Doc. 50. The district court granted the request. *Id*., at ECF Doc. 53. On February 3, 2022, the Clerk entered an Amended Judgment "as against respondents the Republic of Haiti and the Bureau de Monétisation des Programmes d'Aide au Développement (collectively, 'BMPAD'). Final judgment is entered for [Preble-Rish] as against BMPAD" (the "6704 Case Judgment"). SDNY Case No. 21-cv-6704, ECF Doc. 56.

10

The Republic had not appeared in the case before entry of the 6704 Case Judgment. *See generally* Docket in SDNY Case No. 21-cv-6704, ECF filings through February 3, 2022.

The Republic then retained the undersigned counsel and, on February 22, 2022, appeared in the case for the first time. SDNY Case No. 21-cv-6704, ECF Docs. 58-61. The same day, the Republic moved under Rules 60(b) and 59(e) for relief from the 6704 Case Judgment or to alter and amend the judgment. *Id.*, at ECF Docs. 63—66-3. The motion argued, among other things, that the district court lacked subject matter and personal jurisdiction under the FSIA and that the Republic had not been properly served under the FSIA, as the only claimed service of the petition had been by fax on Harris Bricken, *id.*, ECF Doc. 12, which, this time, made clear the firm was only representing BMPAD. The Republic submitted a supporting declaration from Minister Boisvert, explaining that the Republic never retained Harris Bricken or authorized the firm to act on its behalf in arbitration or litigation against Preble-Rish, and had never communicated with anyone from the firm. *Id.* at ECF Docs. 66—66-3 (the "Boisvert Declaration").

### D. The Arbitration Hearing And The Final Arbitration Award

Meanwhile, two weeks earlier on February 7, 2022, an arbitration hearing was held by videoconference. SPA-6. Harris Bricken appeared for BMPAD and claimed to be appearing for the Republic. JA-51-52. Again, this claimed appearance was unauthorized and unknown to the Republic. JA-488-489. Around the same time, the

firm admitted in a letter to this Court that it had learned six months earlier, in July 2021, that the firm had never been authorized to represent the Republic. JA-814 ("It came to our attention in or around July 2021 that my firm had not been properly retained to have the authority to represent the Republic . . . .Before July 2021 my firm had the understanding [from a third party that] we were authorized to represent the Republic, but this was incorrect.").

On February 23, 2022, the Republic, via undersigned counsel, submitted a letter to the arbitration panel requesting clarification that the Partial Award did not run against the Republic, explaining that its request was prompted by Preble-Rish having nonetheless filed the petition to confirm the Partial Award against the Republic. JA-321.

Preble-Rish submitted a responsive letter on March 14, 2022, arguing that the dispute was arbitrable against the non-signatory Republic on an alleged alter ego and other theories. JA-566-575.  On March 24, 2022, the Republic submitted a reply, arguing the arbitrators lacked jurisdiction to decide the arbitrability issue raised by Preble-Rish in its March 14, 2022 letter, and that Preble-Rish's theories of arbitrability also failed on the merits.  JA-474-484. The Republic's reply submission included the Boisvert Declaration explaining that Harris Bricken was never authorized to represent the Republic in the arbitration. JA-486-490. The arbitrators

12

denied the Republic's request for clarification of the Partial Award, stating that they would "address those issues in our final award."  JA-53.

On August 23, 2022, the arbitrators issued a Corrected Final Award (the "Final Award").  In the Final Award, the arbitrators awarded Preble-Rish a total of $28,184,756.65 against BMPAD and the Republic, jointly and severally.  JA-110.

The arbitrators took jurisdiction of the arbitrability issue and ruled that the Republic had waived its "non-signatory" defense to arbitrability, based on Harris Bricken having failed to raise the argument in the state court Stay Petition or in the arbitration.  JA-80-83.  The panel acknowledged the undersigned counsel's February 23 and March 24, 2022 post-hearing letters to the panel identifying, then briefing, the non-signatory issue, but did not count them as having raised the issue.  Instead, the panel considered Preble-Rish's non-signatory theories of arbitrability, raised for the first time in its March 14, 2022 post-hearing letter, and ruled that the dispute was arbitrable under Preble-Rish's alter ego and agency theories. JA-83-85.

### E. The Petition To Confirm In This Action And The Republic's Motion To Dismiss Or Vacate The Arbitration Award

On September 1, 2022, Preble-Rish filed the petition below to confirm the Final Award (the "Petition").  JA-12-33, 112-114.  Preble-Rish attempted multiple times to effect service, JA-123, 124, 125, 763, 888, but as shown further below, service as required by the FSIA was never effected.

The Republic moved to dismiss the Petition for lack of subject matter and personal jurisdiction, and improper service, under the FSIA, or, in the alternative, to vacate the Final Award on the grounds that the arbitrators exceeded their powers in finding the dispute arbitrable against the Republic as a non-signatory to the Contracts.  The Republic also opposed confirmation of the Final Award.

### F. The District Court Decision

In its Order dated June 29, 2023, the district court granted Preble-Rish's Petition and denied the Republic's motion to dismiss or vacate the Final Award. SPA-1-26.  The court ruled that the Republic's arguments for dismissal were "barred by principles of res judicata," SPA-15, based on the State Court Stay Denial Order. SPA-17.

The court recognized that under the Full Faith and Credit Act the preclusive effect of the State Court Stay Denial Order had to be determined by state law.  SPA-15.  The court then explained that under CPLR 7503, a "threshold question" on a motion to stay or compel arbitration is "'whether the parties made a valid agreement to arbitrate."  SPA-15.  The court ruled that the state court's "treatment of this threshold issue is entitled to preclusive effect." SPA-16.  Citing a single district court case from 1988 and no New York authority, the district court stated that where a stay has been denied or a motion to compel arbitration granted, the party opposing arbitration is bound by the state court's "determination that the dispute is arbitrable." SPA-16.

14

Applying these propositions, the district court explained that Harris Bricken's Petition to Stay had asserted that "Petitioner**s** have a contract for product with Respondent," and that Justice Borrok's order had stated that "'it is beyond dispute that the parties freely and unequivocally agreed to arbitrate all their disputes in New York.'" SPA-17. The court concluded that "Justice Borrok's decision is a final judgment on the merits" and that the Republic was therefore "precluded from relitigating issues that were or could have been raised in that proceeding." SPA-17. Accordingly, the court concluded that the Republic "cannot now deny that it had valid arbitration agreement with PRH," and "is not entitled to FSIA immunity." SPA-17.

The district court also declined to consider the Republic's arguments that Harris Bricken's lack of actual or apparent authority meant the Republic could not be bound by the State Court Stay Denial Order. The court reasoned that "federal district courts do not sit in review of state court judgments" and that if the Republic seeks to attack that order "the proper forum would be the courts of New York." SPA-17-18.

The court applied the same preclusion analysis to the Republic's alternative motion to vacate the arbitration award, declining to consider the merits of the Republic's arguments that the arbitrators exceeded their powers by deciding the question of arbitrability against the Republic as a non-party to the Contracts. SPA-

15

23. Rather, because arbitrability had been determined by Justice Borrok, the Republic was precluded "from relitigating issues that were or could have been raised in" the Stay Petition, again citing a federal case and no state authority. SPA-23-24. The court then granted the petition to confirm and denied the Republic's motion to vacate.  SPA-24.

Finally, the district court rejected the Republic's argument of improper service under the FSIA and thus concluded that it had personal jurisdiction over the Republic. SPA-18-21.  The court held that the Contracts contained a "special arrangement for service," 28 U.S.C. § 1608(a)(1), allowing for "correspondence between the Parties subject to this Contract" to be delivered by email to the Executive Director of BMPAD.  The court found that the Petition had been emailed to the Executive Director of BMPAD on October 6, 2022. SPA-19-20. The court again rejected the Republic's arguments that it could not be subject to any "special arrangement" for service because it is not a party to the Contracts, on the ground that the argument was precluded by the State Court Stay Denial Order. SPA-21.

Final Judgment was entered on July 20, 2023.  SPA-27-28.

## SUMMARY OF THE ARGUMENT

The district court erred in denying the Republic's motion to dismiss the Petition or, in the alternative, to vacate the Final Award and entering Final Judgment against the Republic, and, conversely, in granting Preble-Rish's petition to confirm the Final Award.

The district court should have dismissed the Petition on any one of multiple independent grounds. First, the court lacked subject matter jurisdiction under the FSIA, the sole basis for exercising subject matter jurisdiction over a foreign sovereign. The FSIA confers sovereign immunity on the Republic unless an exception applies. The court erred in invoking the arbitration exception to immunity, since the Republic is not a party to the Contracts.  The district court misapplied the doctrine of res judicata to erroneously conclude that the Republic's arguments challenging subject matter jurisdiction were precluded by the State Court Stay Denial Order.

The district court also lacked personal jurisdiction over the Republic. Under the FSIA, personal jurisdiction exists where subject matter jurisdiction exists and service is properly made under the FSIA's strictly construed service requirements. In addition to subject matter jurisdiction being absent, service of the Petition was not timely effected by any one of the statute's authorized and readily achievable methods. The absence of compliant service dictated dismissal not only on that basis

17

under Rule 12(b)(5) and the FSIA, but also for lack of personal jurisdiction under the FSIA.

Finally, even if the district court properly concluded (which it did not) that jurisdiction existed and proper service was not necessary, it should nonetheless have granted the Republic's cross motion to vacate because Preble-Rish's dispute with BMPAD is not arbitrable against the Republic as a non-signatory to the Contracts. The court erred in holding this argument precluded by the State Court Stay Denial Order. Indeed, the New York rules of preclusion governing Justice Borrok's order expressly hold that a litigant in the Republic's position may challenge arbitrability on a motion to vacate after having lost a motion to stay the arbitration. The district court therefore should have considered the Republic's arbitrability argument on the merits; ruled on the question *de novo*; rejected Preble-Rish's alter ego and agency theories; and held the dispute not arbitrable against the Republic.

Accordingly, this Court should reverse the Order, dismiss the Petition or, in the alternative, vacate the Final Award, and vacate Final Judgment.

## <u>STANDARD OF REVIEW</u>

This Court reviews "a district court's legal conclusions under the FSIA *de novo*. This includes determinations that a foreign state or its property is or is not protected by immunity." *Walters v. Indus. & Commer. Bank of China, Ltd*., 651 F.3d 280, 286 (2d Cir. 2011) (internal citations omitted).

Similarly, "[t]his Court reviews a district court's decision to confirm or vacate an arbitration award *de novo* for questions of law." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013).

## ARGUMENT

## I.     THE DISTRICT COURT SHOULD HAVE DISMISSED THE PETITION FOR LACK OF SUBJECT MATTER JURISDICTION

The district court erred in denying the Republic's motion to dismiss for lack of subject matter jurisdiction.  Neither res judicata nor collateral estoppel bars the Republic's motion, because the elements of these doctrines are absent. Once the erroneous preclusion ruling is removed, it is clear the arbitration exception to the Republic's sovereign immunity does not apply because the Republic is not a party to the arbitration agreement.

### A.     Res Judicata Does Not Bar The Republic's Motion To Dismiss For Lack of Subject Matter Jurisdiction

The district court acknowledged that a federal court must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parson Steel Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986); SPA-15-16. New York res judicata doctrine does not bar the Republic's motion to dismiss for lack of subject matter jurisdiction.

Under New York's "transactional approach" to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *Josey v. Goord*, 9 N.Y.3d 386, 389–90 (2007).  The "doctrine of res judicata only bars additional actions between the same parties on the same claims based upon the same harm."  *Rojas v. Romanoff*, 186 A.D.3d 103, 108 (1st Dep't

2020) (internal quotation marks omitted). "[W]here a claim could not have been raised in the prior litigation because it had not yet matured, res judicata does not apply." *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 159 A.D.3d 512, 513 (1st Dep't 2018); *see also, e.g., O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981) (certain allegations at issue "are not barred by res judicata to the extent that they describe acts occurring after the 1973 lawsuit"). As applied to defenses, the transactional approach asks whether the defenses in the current action "arise from the same transaction" and "were either raised or could have been raised as defenses in the prior action." *Mony Credit Corp. v. Colt Container Servs., Inc.*, 169 A.D.2d 760, 565 N.Y.S.2d 126, 127 (1st Dep't 1991).

The Republic's motion to dismiss the Petition for lack of subject matter jurisdiction was not raised and could not have been raised in Harris Bricken's Stay Petition, and the motion does not arise out of the same transaction as the Stay Petition. First, the Republic's subject matter jurisdiction defense under the FSIA, the claim the district court held was barred, was not and could not have been raised in the Stay Petition, because Preble-Rish did not seek to assert federal subject matter jurisdiction over the Republic in that proceeding. The subject matter jurisdiction defense applies specifically to the claims asserted in this Petition. Preble-Rish had obviously not yet brought those claims as of the December 2020 Stay Petition, and

thus Harris Bricken, or the Republic if it had participated, could not have asserted the defense in the Stay Petition proceedings.

In addition, the Stay Petition and the Republic's motion to dismiss arise from different transactions. The Stay Petition transaction arises from Preble-Rish's issuance to BMPAD of the Arbitration Demand dated November 20, 2020 (JA-470-472): the Demand was the only arbitration-related event that had occurred when Harris Bricken brought the Stay Petition a month later in December 2020, and the only factual predicate for the Stay Petition. The Republic's subject matter jurisdiction arguments for dismissal, by contrast, arise from the Final Award and the Petition to confirm it. The subject matter jurisdiction defense cannot arise from the Arbitration Demand because the Republic would have no ability to raise its FSIA-based subject matter jurisdiction defense in response to the Arbitration Demand. Rather, the only transaction or series of transactions that give rise to this defense are the Final Award and Preble-Rish's ensuing Petition to confirm it. Thus, the essential elements of res judicata are not met.

Nonetheless, the district court ruled that the state court's treatment of the "threshold issue" whether Preble-Rish and the Republic had a valid arbitration agreement was "entitled to preclusive effect." SPA-16. As the court explained it, based on the State Court Stay Denial Order, the Republic "cannot now deny that it had a valid arbitration agreement with" Preble-Rish. SPA-17. This holding, barring

22

the Republic from raising a factual issue based on the district court's assessment of

what Justice Borrok decided in his order, invokes collateral estoppel. *See, e.g., Ryan*

*v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984) (collateral estoppel "allows the

determination of an issue of fact or law raised in a subsequent action by reference to

a previous judgment on a different cause of action in which the same issue was

necessarily raised and decided") (cleaned up).

### B. Collateral Estoppel Does Not Bar The Republic's Motion To Dismiss For Lack of Subject Matter Jurisdiction

To the extent the court's res judicata ruling in substance rests on collateral

estoppel it is equally erroneous. For collateral estoppel to apply, "[t]here must be an

identity of issue which has necessarily been decided in the prior action and is

decisive in the present action, and there must have been a full and fair opportunity to

contest the decision now said to be controlling." *Buechel v. Bain*, 97 N.Y.2d 295,

304, 766 N.E.2d 914, 919 (2001).[1] Multiple elements are absent here.

---

[1] "New York courts apply both *res judicata* and collateral estoppel to prior state court judgments." *Beharry v. M.T.A. New York City Transit Auth.*, No. 96-CV-1203 (FB), 1999 WL 151671, at *5 (E.D.N.Y. Mar. 17, 1999), *aff'd*, 242 F.3d 364 (2d Cir. 2000). The elements of collateral estoppel under federal law are the same. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001).

23

### 1. Whether An Arbitration Agreement Existed Between Preble-Rish And The Republic Was Not Actually Litigated In The Stay Petition

"[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667 (1990) (cleaned up). But the issue of whether the Republic had an arbitration agreement with Preble-Rish was not properly raised or placed in issue by the Petition to Stay; it was not raised or placed in issue at all, as the district court found. SPA-5 ("The Petition did not dispute that the parties had entered into an agreement containing an arbitration clause but instead argued that the arbitration demand was procedurally defective and that the arbitration clauses were invalid under Haitian law."); JA-769-772; JA-773-780 (not raised in accompanying memorandum of law). Justice Borrok could say the existence of an arbitration agreement was "undisputed" exactly because Harris Bricken did not raise the issue. Accordingly, the issue of whether there was an arbitration agreement between the Republic and Preble-Rish was not actually litigated.

### 2. The Republic Lacked A Full And Fair Opportunity To Litigate The Existence Of An Arbitration Agreement

In addition, the Republic lacked a full and fair opportunity to litigate the absence of an arbitration agreement with Preble-Rish because Harris Bricken had no

actual or apparent authority to represent the Republic, or to claim to, in the Stay Petition.

Whether a litigant had a full and fair opportunity "involves a practical inquiry into the realities of litigation." *Gilberg v. Barbieri*, 53 N.Y.2d 285, 292 (1981). This Court and others have held that insufficient legal representation in the prior proceeding means there was no full and fair opportunity. In *Velez v. Reynolds*, 325 F. Supp. 2d 293 (S.D.N.Y. 2004), for example, the district court held there was no full and fair opportunity in a prior family court proceeding, where plaintiff's counsel had never met or spoken with plaintiff; declared she would not be participating in the proceeding; and due to the absence of counsel, facts and evidence that would have helped the plaintiff were "not raised before the family court." *Id.* at 310–11; *see also Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 735 (2d Cir. 2001) (no full and fair opportunity where the plaintiff was pro se in prior proceeding and did not have ability or motivation to litigate issue now sought to be precluded); *Bd. Of Educ. Of Manhasset Union Free Sch. Dist. v. New York State Hum. Rts. Appeal Bd.*, 106 A.D.2d 364, 366 (2d Dep't 1984) (no full and fair opportunity to litigate racial slur allegation where issue "was only briefly explored" in prior proceeding, no witnesses with facts were present, and complainant lacked counsel).

Harris Bricken lacked actual or apparent authority to represent the Republic in the Stay Petition. First, Harris Bricken lacked actual authority: the uncontroverted

25

evidence, a declaration from Haiti's Minister of Economy and Finance, JA-488-489, states that Harris Bricken was never authorized to represent the Republic in the arbitration or in any other litigation involving Preble-Rish. Harris Bricken itself admitted as much in a February 2022 letter to this Court in Preble-Rish's appeal in Docket No. 21-2469, one of the appeals to be heard in tandem with this one. JA-814 ("Before July 2021 my firm had the understanding [from a third party] we were authorized to represent the Republic, but this was incorrect.").

Harris Bricken also lacked apparent authority to act on behalf of the Republic, and thus the firm's legal positions cannot bind the Republic. "[A]pparent authority 'is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent.'" *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 289 (2d Cir. 2003) (quoting Restatement (Second) of Agency cmt. A, § 27, in turn citing *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)). As this Court expressly stated in the latter case:

> Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and **explicitly rejects the notion that an agent can create apparent authority by his own actions or representations**.

*Fennell*, 865 F.2d at 502 (emphasis added); *see also id.* (apparent authority not present where record devoid of direct communication from client to opposing

attorney).  That is the case here.  As Minister Boisvert attested, it is only in or about February 2022 that the Republic first became aware that Harris Bricken was claiming to represent the Republic, and no one from the Republic ever communicated with Harris Bricken. JA-488-89, 490.  The district court identified no manifestation by the Republic that Harris Bricken was authorized to represent it in the state court proceeding—because there was no such manifestation.

The upshot is that the Republic had no authorized counsel in state court. Harris Bricken's litigating positions also suggest it knew it was not really acting on behalf of the Republic—yet represented to the contrary—given that the only arguments the firm raised on the Stay Petition were for the benefit of BMPAD.  The obvious and meritorious argument for a stay on behalf of the Republic was that no arbitration agreement exists between Preble-Rish and the Republic, and Harris Bricken's failure to make the argument has grossly and unjustly prejudiced the Republic.  The firm's actions made things far worse for the Republic than if the Republic had had no counsel, since if that had been the case Justice Borrok would not have had a basis to draw any conclusions about the Republic's relationship to the dispute. In these circumstances, there was no full and fair opportunity to litigate the issue of whether an arbitration agreement existed between Preble-Rish and the Republic.

**C.**    **Absent Any Preclusive Effect Of The State Court Stay Denial Order, The District Court Erred In Concluding It Had Subject Matter Jurisdiction, Since No Exception To Immunity Applies__**

Absent the erroneous res judicata ruling, it is apparent that the Republic is immune under the FSIA and the "arbitration exception," 28 U.S.C. § 1605(a)(6), does not apply.

**1.**    **The FSIA Is The Sole Basis For Establishing Subject-Matter Jurisdiction Over The Republic**

"The FSIA is 'the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" *Filler v. Hanvit Bank*, 378 F.3d 213, 216 (2d Cir. 2004) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).[2]  Under Section 1604 of the FSIA, a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604; *see also Kato v. Ishihara*, 360 F.3d 106, 107-08 (2d Cir. 2004) (under FSIA, "foreign sovereigns . . . enjoy immunity from suit in United States courts, subject to a few, enumerated statutory exceptions.")  (internal quotation marks and citations omitted); *see also Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 196 (2d Cir. 2016) (only if the action in which foreign state is a defendant falls within an exception enumerated in the FSIA "will jurisdiction lie").

---

[2] In contrast, FAA provisions "do not themselves support federal jurisdiction." *Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022).

Since there is no dispute that the Republic is a foreign sovereign, JA-486, "the burden then shifts to the plaintiff to show that a FSIA-enumerated exception to sovereign immunity applies." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek* (*Persero*), 600 F.3d 171, 175 (2d Cir. 2010) (citation omitted). Preble-Rish did not and cannot meet that burden.

### a) The Arbitration Exception Does Not Apply

The FSIA creates an exception to immunity where the action is brought to confirm an arbitration award made pursuant to "an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration" differences that may arise "with respect to a defined legal relationship, whether contractual or not[.]" 28 U.S.C. § 1605(a)(6). The exception under Section 1605(a)(6) applies only where there is an arbitration agreement "made by the foreign state with . . . a private party." 28 U.S.C. § 1605(a)(6).

This Court has made clear that the "made by" requirement of Section 1605(a)(6) means what it says. In *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42 (2d Cir. 2021), the Court concluded that a party receiving a direct benefit may not be said to have "made" the underlying contract under § 1605(a)(6) because "[w]hen Congress codified the arbitration exception, it specified that the exception applied only in the presence of an agreement 'made by the foreign state.'" *Id*. at 67-68. As the Court explained, "[a] contract can be said to be 'made by' only the parties to it." *Id*. at 67-68 (quoting 28 U.S.C. § 1605(a)(6)). The court in *TIG Insurance Co. v.*

*Republic of Argentina*, No. 18-mc-00129 (DLF), 2022 WL 1154749, at *1, 7

(D.D.C. Apr. 18, 2022), reached the same conclusion, to uphold Argentina's

sovereign immunity because the arbitration agreements were not "made by a

foreign state," but instead by "a state-owned corporation created by Argentina in

1915." As the court in *TIG* explained, citing this Court's *Moldovagaz* decision:

> "Make," in the context of "make a contract," means "[t]o agree upon,
> and conclude or adopt, a contract[;] [i]n case of a written contract, to
> reduce it to writing, execute it in due form, and deliver it as binding." .
> . . On its face, the past participial phrase "made by" refers to the parties
> who reduced the arbitration agreement to writing, executed, and
> delivered it at the time of formation—*i.e.*, the point at which that
> agreement was "made." *See* 28 U.S.C § 1605(a)(6). In that respect, the
> FSIA's exception can apply only to the parties that formed or "made"
> the agreement, *see Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68
> (2d Cir. 2021) (noting that "[a] contract can be said to be 'made by'
> only the parties to it"), and therefore cannot apply to parties that merely
> obtained liability under it.

*TIG*, 2022 WL 1154749, at *7.

Under *Moldovagaz* the arbitration agreement was not "made by" the

Republic within the meaning of § 1605(a)(6) because the Republic is not a party to

the Contracts between Preble-Rish and BMPAD. *See* JA-133, 143, 148, 171, 182,

186, 209, 219, 223 (showing the two parties to the contracts, Preble-Rish and

BMPAD). Thus, the arbitration exception is inapplicable.

### b) The Waiver Exception Does Not Apply

The district court applied the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1), against BMPAD but not against the Republic.  SPA-12-17.  Any argument that this exception applies to the Republic would lack merit.

The exception "is narrowly construed . . . such that waiver under the FSIA must be unambiguous and unmistakable in order to be effective."  *Jacubovich v. State of Isr.*, 816 F. App'x. 505, 507 (2d Cir. 2020) (cleaned up); *see also Cabiri v. Government of Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999) ("[T]he implied waiver provision of Section 1605(a)(1) must be construed narrowly.").  In addition, "Section 1605(a)(1) requires that the plaintiff demonstrate proof of a subjective intent to waive immunity."  *Id*.

Like the foreign sovereign in *Jacubovich* that this Court held did not waive immunity, the Republic "has maintained since the beginning of this lawsuit that it is immune under the FSIA," and "has not taken any actions in this litigation that suggest a contrary intent." 816 F. App'x. at 509 (emphasis omitted).  Accordingly, the waiver exception does not apply.

## II.  THE DISTRICT COURT SHOULD HAVE DISMISSED THE PETITION FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

### A.  Strict Adherence To The FSIA's Service Requirements Is Required

The district court erred in concluding that service was properly made pursuant to a "special arrangement" under 28 U.S.C. § 1608(a)(1).  SPA-19.

31

The FAA, 9 U.S.C. § 9, does not provide a method of service for foreign parties not resident in any district. Courts, however, including this Court, have concluded that a petition and motion to confirm an arbitration award in such circumstances must be served pursuant to Fed. R. Civ. P. 4. *See Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1277 (2d Cir. 1971); *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 123 (2d Cir. 2012) (noting that Rule 4 applies in proceedings to confirm arbitration awards) (Straub, J., dissenting); *see also Technologists, Inc. v. Mir's Ltd*., 725 F. Supp. 2d 120, 126-27 (D.D.C. 2010) (holding that motion to vacate, correct, or modify an arbitration award must be served on foreign adverse party consistent with Rule 4; "the weight of authority supports application of Rule 4 to the service of a motion to vacate an arbitration award filed pursuant to 9 U.S.C. § 10") (citing cases).

Pursuant to Rule 4(j), "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j). Section 1608(a) "sets out in hierarchical order the following four methods by which '[s]ervice . . . shall be made,'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019):

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

32

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

"Courts have long held that section 1608(a), which governs service upon a foreign state, requires strict adherence to the FSIA's literal terms enumerated in Section 1608(a), not merely substantial compliance." *Lovati v. Bolivarian Republic of Venez.*, No. 19-CV-4793 (ALC), 2020 WL 6647423, at *2 (S.D.N.Y. Nov. 11, 2020); *see also Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 317 (D.D.C. 2022) ("The D.C. Circuit has explained that mere 'substantial compliance' with § 1608(a) is the same, for personal jurisdiction purposes, as not complying with § 1608(a) at all."); *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008) (citing cases).

33

**B.    The District Court Erred In Ruling That The Arbitration Agreement Contains A Special Arrangement For Service Of Process**

The district court erred in concluding that the Contracts contain a "special arrangement" for service of process on the Republic within the meaning of the FSIA, 28 U.S.C. § 1608(a)(1), via the notice provision stating that "all correspondence between the Parties subject to this Contract shall be addressed to" Mr. Saint Fleur of BMPAD.  SPA-19-21.

As an initial matter, the ruling is in error because, as explained above, the State Court Stay Denial Order has no preclusive effect on the Republic.  As the Republic is not a party to the Contracts with their notice provisions, it did not agree to any "special arrangement" for service of process.

The district court further held the contractual notice provision contained in the Contracts—referring to "all correspondence between the Parties subject to this Contract", SPA-19-20—no different from the far broader provision in *Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design Off.*, 164 F. Supp. 2d 397 (S.D.N.Y. 2001) ("*Loral*"), which provided for notice of "all notices and communications between the parties." *Id*. at 402.  Every case cited in the *Loral* case contained similarly all-encompassing provisions.  *See id*.  But "[c]ourts have interpreted the 'special arrangement' language of Section 1608 narrowly, such that a special arrangement exists only where the language is all encompassing rather than confined to the contract or agreement at issue."  *Berkowitz v. Republic of Costa Rica*, 288 F. Supp.

3d 166, 173 (D.D.C. 2018) (internal quotation marks and citation omitted).  Unlike the contractual language in *Loral*, the language here—"all correspondence between the Parties subject to this Contract"—is **not** all encompassing but rather is limited to "correspondence" that is tied to the Contracts.  "This kind of limitation is crucial in determining whether the provision creates a special arrangement." *Chiejina v. Fed. Republic of Nigeria*, No. CV 21-2241 (RJL), 2022 WL 3646377, at *3 (D.D.C. Aug. 24, 2022) (rejecting argument that contract language created special arrangement). The language of the notice provisions in the Contracts does not create a special arrangement for service of process under FISA.  Thus, the Court erred in ruling that service was properly effected.

*Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802 (2d Cir. 2022), cited by the district court, SPA-18, does not say otherwise. *Commodities & Minerals* does not shed light on whether the Contracts can be interpreted as containing a "special arrangement" for service because the issue was undisputed in the case, which instead held that a summons need not be served with a petition to confirm.

### C.  <u>There Is No Alternative Basis For Finding Proper Service</u>

Although the district court did not rule on whether service was proper under any of the other three methods specified by 1608(a), there is no alternative basis on which to find proper service.  As to § 1608(a)(2), Preble-Rish never argued, nor could it, that the Republic is a signatory to any "applicable international convention

on service of judicial documents."[3] Next, Preble-Rish cannot claim that service was made within 30 days, "by any form of mail requiring a signed receipt, to be addressed and dispatched" by the court clerk to the Republic's Minister of Foreign Affairs. 28 U.S.C. § 1608(a)(3), (a)(4). The only clerk's certificate of mailing to the Minister of Foreign Affairs made within 30 days (JA-125) does not specify that it was sent by a method "requiring a signed receipt." Finally, as to § 1608(a)(4), there is no indication in either of Preble-Rish's late October 2022 filings (JA-888-891) that the Secretary of State sent to the clerk of court "a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(4). Even if that late October 2022 claimed (a)(4) service was compliant, moreover, service under (a)(3) was not, and "failure to completely comply with one method" cannot be "obviated merely by moving along to the next option", otherwise the "strict-adherence rule would lose much of its force." *Przewozman*, 628 F. Supp. 3d at 317.

The absence of proper service requires dismissal. *See Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 604 (S.D.N.Y. 2016) (dismissing claims against Welsh Government for improper service under section 1608(a) because "strict adherence to the terms of [§] 1608(a) is required"); *Seramur v. Saudi Arabian*

---

[3] The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, does not provide for service.

*Airlines*, 934 F. Supp. 48, 53 (E.D.N.Y. 1996) (granting motion to dismiss for insufficient service of process pursuant to Section 1608(b)).

### D. Absent Either Of Proper Service Or Subject Matter Jurisdiction, The District Could Lacked Personal Jurisdiction Over The Republic

The district court erred in concluding that it has personal jurisdiction over the Republic.

"[P]ersonal jurisdiction under the FSIA equals subject matter jurisdiction plus valid service of process." *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000) (internal quotation marks omitted). Although the absence of either one defeats personal jurisdiction, neither is present here. As shown above, the district court lacked subject matter jurisdiction, and proper service was not made. Accordingly, the district court lacked personal jurisdiction over the Republic. *See, e.g., Micula v. Government of Rom.*, 714 F. App'x. 18, 21 (2d Cir. 2017) (district court lacked personal jurisdiction over Romania based, among other things, upon improper service under the FSIA, and erred in declining to vacate its judgment enforcing arbitration award as void); *Mobil Cerro Negro, Ltd. v. Bolivarian Repub. Of Venezuela*, 863 F.3d 96, 124-25 (2d Cir. 2017) (because award creditor failed to satisfy FSIA's service requirement, district court lacked jurisdiction over foreign sovereign and judgment was void). The Petition therefore should have been dismissed for this reason as well.

**III. IN THE ALTERNATIVE, THE DISTRICT COURT SHOULD HAVE VACATED THE FINAL AWARD AS TO THE REPUBLIC**

Even if the district court did not err in failing to dismiss the Petition for lack of subject matter and personal jurisdiction and improper service, the Final Award should have been vacated.

**A. Legal Framework And Standards Governing Vacatur Of The Final Award**

As the district court correctly stated, SPA-10-11, confirmation and vacatur of the Final Award are governed by the New York Convention, which incorporates the FAA's grounds for vacating an award.

The Convention applies to awards "'not considered as domestic awards in the State where their recognition and enforcement are sought.'" *Yusef Ahmed Alghanim, W.L.L. & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 (2d Cir. 1997) (quoting New York Convention art. I(1)). Awards "not considered as domestic" include those that involve "'parties domiciled or having their principal place of business outside the enforcing jurisdiction.'" *Id.* at 19 (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983)). That describes the arbitration here: it involves non-U.S. citizens located in Haiti and contracts made and to be performed in Haiti. *See, e.g.*, *Yusef Ahmed Alghanim*, 126 F.3d at 19.

The New York Convention, in turn, incorporates the FAA in providing grounds for vacatur of an award. Via Article V(1)(e), "[t]he Convention specifically contemplates that the state in which, or under the law of which, the award is made,

38

will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Id.* at 23 (citing Convention art. V(1)(e)). Because the arbitrators issued their award in the United States, JA-110-111, "available grounds for vacatur include all the express grounds for vacating an award under the FAA." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588-89 (2d Cir. 2016). As relevant here, the FAA's grounds for vacating an arbitration award include "where the arbitrators exceeded their powers," 9 U.S.C. § 10(a)(4).

**B.    The Arbitrators Exceeded Their Powers In Ruling That Preble-Rish's Dispute With BMPAD Was Arbitrable Against The Republic As A Non-Signatory To The Contracts**

The arbitrators exceeded their powers in taking jurisdiction of the arbitrability issue and deciding it against the Republic, since the Republic is not a party or signatory to the Contracts. The district court declined to consider this argument on the merits, ruling that "the question of arbitrability" had "already been judicially determined" by Justice Borrok in the Stay Petition proceedings, and therefore could not be relitigated. SPA-23-24. This ruling was error. The court should have vacated the Final Award and determined the Republic's challenge to arbitrability *de novo*.

**1.    The Republic's Arbitrability Challenge Is Not Barred By Res Judicata**

As shown above and acknowledged by the district court, the preclusive effect of the State Court Stay Denial Order is governed by New York's rules of preclusion.

*See supra* Point I.A.  In the case of a state court order denying a motion to stay arbitration under CPLR 7503, the rules of preclusion are contained in the interlocking provisions of CPLR 7511 and 7503.  For a litigant in the Republic's position, there is no preclusion.

CPLR 7511(b) sets forth two distinct sets of grounds for vacating an arbitration award.  First, CPLR 7511(b)(1) applies to "a party who either participated in the arbitration or was served with a notice of intention to arbitrate," and sets forth a narrow set of grounds for vacating an award.  Next, CPLR 7511(b)(2) governs motions to vacate by a "party who neither participated in the arbitration nor was served with a notice of intention to arbitrate" and allows such a party to move to vacate an arbitration award under CPLR 7511(b)(2) on a broader set of grounds, including that "a valid agreement to arbitrate was not made."  CPLR 7511(b)(2).  *See Com. & Indus. Ins. Co. v. Nester*, 90 N.Y.2d 255, 263 (1997) ("CPLR 7511 allows a party who has not participated in the arbitration nor was served with a notice of intention to arbitrate to vacate an award on the ground that 'a valid agreement to arbitrate was not made'") (quoting CPLR 7511(b)(2)(ii)).

This is the provision that governs the Republic's ability to move to vacate the award and it makes clear the Republic's challenge to arbitrability is not barred.  As shown above, the Republic did not participate in the arbitration because Harris

Bricken never had actual or apparent authority to represent the Republic in the arbitration, or to claim that it did. *See supra* Point I.B.2.

But even assuming the Republic is deemed to have participated in the arbitration via unauthorized counsel, it is indisputable that the Republic was not served with a valid notice of intention to arbitrate. CPLR 7503(c) governs the contents and service of a notice of intention to arbitrate and mandates that the arbitration demand state "that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made." The same provision mandates that the demand "shall be served in the same manner as a summons or by registered or certified mail, return receipt requested." Preble-Rish's "Notice Demanding Arbitration" did not meet either requirement. *See* JA-470-472 (no statement on need to seek stay within 20 days and not served in compliance with CPLR 7503(c) as letter purports to serve all recipients by email). Even if Preble-Rish's email delivery were to be deemed compliant with the strict service requirement of 7503, there can be no dispute that the Arbitration Demand said nothing about the need to seek a stay within 20 days in order to not be precluded from arguing there was no valid arbitration agreement.

If a notice fails to meet the requirements of CPLR 7503(c), the consequence is that the party resisting arbitration remains free to later challenge arbitrability on a

41

motion to vacate, under CPLR 7511(b)(2), as the New York Court of Appeals explained:

> Thus, CPLR 7503(c) is a critical notice provision in the statute. In fact, the validity of the 20–day limitation period depends upon the sufficiency of the notice. . . . **In the instant case, petitioner's notice of arbitration did not contain the requisite language of CPLR 7503(c) and, therefore, respondent employer cannot be said to have been "served with a notice of intention to arbitrate" within the meaning of CPLR 7511(b)(2) (see also, Weinstein–Korn–Miller, N.Y. Civ. Prac. ¶ 7503.29 ["Thus, it is well settled that unless the notice fully complies with statutory requirements it will not be effective in precluding the raising of these issues in a manner other than by motion to stay."] ). Consequently, respondent employer may properly seek the broader and additional remedies articulated in CPLR 7511(b)(2).**

*Matter of Blamowski (Munson Transp., Inc.)*, 91 N.Y.2d 190, 195 (1997) (emphasis added, internal citation omitted).

The case law confirms that, contrary to the district court's analysis, denial of a motion to stay arbitration does not automatically bar the losing party from challenging arbitrability on a motion to vacate. The New York Court of Appeals expressly explained this in *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299 (1984):

> [I]t is only when the sole matter sought to be submitted to arbitration is clearly beyond the arbitrator's power that a stay will be granted. **That a stay cannot be obtained does not foreclose postarbitration reliance upon a claimed limitation on the arbitrator's power.** The limitation will not be waived if the party relying on it asserts it at Special Term in opposition to an application for confirmation or as the basis for a motion to vacate.

*Id*. at 309 (emphasis added). Indeed, multiple cases exist in which the party resisting arbitration loses its motion to stay the arbitration then goes on to have its motion to

42

vacate heard on the merits. *See Marthan Equities, Inc. v. P. M. Realty Mgmt. Corp.*, 216 A.D.2d 180, 180 (1st Dep't 1995) (vacating arbitration award on motion to vacate after moving party was earlier denied a stay); *Intercontinental Packaging Co. v. China Nat. Cereals, Oils & Foodstuff Imp. & Exp. Corp., Shanghai Foodstuffs Branch*, 172 A.D.2d 224, 225 (1st Dep't 1991) (following denial of cross-motion to stay arbitration, parties proceeded to arbitration; same party that was denied stay moved to vacate arbitration award; First Department reversed trial court's denial of motion vacate and vacated arbitration award); *see also City of Yonkers v. Police Benevolent Ass'n of City of Yonkers*, 210 A.D.3d 765, 767 (2d Dep't 2022) (denying vacatur on the merits after denial of petition to stay arbitration).

Consistent with the foregoing case law, research has not disclosed a single case holding that under New York law a motion to stay arbitration operates as res judicata as to a motion to vacate the subsequently-issued arbitration award. Neither the district court nor Preble-Rish has ever cited one. The sole case cited by the district court as authority for its res judicata ruling, *Morgan v. Nikko Sec. Co. Int'l*, 691 F. Supp. 792 (S.D.N.Y. 1988), *see* SPA-16, stated the preclusion point in dicta and cited two state cases neither of which involved a motion to vacate an arbitration award as the second action after an earlier motion to stay the arbitration.[4] *See*

---

[4] In the first case cited in *Morgan*, *Potter v. Motor Vehicle Accident Indemnification Corp.*, 73 A.D.2d 787, 787–88 (4th Dep't 1979), an order staying arbitration was held to be res judicata in subsequent declaratory judgment action. In the second case

*Morgan*, 691 F. Supp. at 799-800.  By contrast, as shown above, multiple New York cases make clear that courts consider motions to vacate on the merits after the moving party has lost an earlier motion to stay the arbitration.  Moreover, in the discussion cited by the district court, the *Morgan* court was referring to the scenario in which the party resisting arbitration had received a notice of intention to arbitrate compliant with CPLR 7503(c), *see id*. at 799, which, as shown below is not the case here.

> ### 2.    The Arbitrators Had No Power To Determine The Question Of Arbitrability As Against The Republic

Given that the Republic was not barred from challenging arbitrability on its motion to vacate, the district court should have determined the Republic's motion to vacate on the merits.  The motion should have been granted and the Final Award vacated because in taking jurisdiction to decide arbitrability, the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4).

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the "*question of arbitrability,*" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also DDK Hotels, LLC v.*

---

cited in *Morgan*, *Reo Garment, Inc. v. Jason Corp*., 6 A.D.2d 401, 402–03 (1st Dep't 1958), a pre-CPLR case, the denial of motion for stay of arbitration was held to be res judicata in a second action seeking an injunction to stay the same arbitration.  *See Morgan*, 691 F. Supp. at 799-800.

*Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (same).  As the Supreme explained:

> [T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. . . .  If . . . the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.

*First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995) (emphases in original).

Since there is no arbitration agreement at all between Preble-Rish and the Republic, there can be no clear and unmistakable intent to arbitrate and the arbitrators had no authority to decide questions of arbitrability.

The rule is no different just because Preble-Rish advances theories of arbitrability applicable to non-signatories. "The general rule . . . that arbitrability is a matter for the Court to decide . . . applies to the determination of whether a party can be compelled to arbitrate as an alter ego of a party to an arbitration agreement." *Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd.*, No. 07 Civ. 10649 (JGK), 2008 WL 463720, at *1 (S.D.N.Y. Feb. 19, 2008); *see also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520 (3d Cir. 1994) (court not bound by arbitrators' determination that non-signatory was alter ego of corporation; "[h]e is entitled to independent judicial determination of that issue"), *aff'd*, 514 U.S. 938 (1995);

*iPayment, Inc. v. 1st Americard, Inc.*, No. 15 Civ. 1904 (AT), 2016 WL 1544736, at *5 (S.D.N.Y. Mar. 25, 2016) (non-signatories challenging arbitrability entitled to "independent determination of iPayment's veil-piercing claim").

The arbitrators nonetheless claimed they had jurisdiction to decide the arbitrability question, citing the Restatement (Third) U.S. Law of Int'l Comm. Arb. § 2.8. JA-76-77. The selective excerpts cited by the panel, however, do not cover the setting at issue here of a non-signatory challenging the panel's power to decide arbitrability. In that context, the Restatement is consistent with Second Circuit law, providing in § 2.13 ("Arbitration Agreement Does Not Exist") that "a court decides" whether an arbitration agreement exists, except if "the parties clearly and unmistakably delegated those questions to an arbitral tribunal." Restatement (Third) U.S. Law of Int'l Comm. Arb. § 2.13(a) and (b) (2019). The commentary leaves no doubt: "A court determines the existence of an agreement to arbitrate if it is challenged." *Id*. § 2.13 cmt. c. Whatever the Restatement says, moreover, Supreme Court and this Court's precedents control, and, as shown above, those authorities make clear that as to the Republic here, arbitrability is a question for the court. As the arbitrators' decision that the Republic waived its arbitrability challenge means the arbitrators decided the issue of arbitrability, the arbitrators also necessarily lacked the power to find a waiver.

46

Thus, in taking jurisdiction to decide the arbitrability issue, including to decide whether the Republic waived arbitrability, the arbitrators exceeded their power, and the Final Award, accordingly, should be vacated pursuant to section 10(a)(4) of the FAA.[5]

### C. The District Court Should Have Vacated The Final Award And Conducted An Independent Review To Determine Whether The Dispute Is Arbitrable Against The Republic, And The District Court Should Do So On Remand, Or This Court May Itself Decide The Question

Since the arbitrability of Preble-Rish's dispute against the Republic had to be decided by the district court, not the arbitrators, the district court erred in failing to conduct an independent review of the Republic's challenge to arbitrability. Had the district court conducted the independent review required under *First Options*, the court would have concluded as a matter of law that there was no evidence before the arbitrators remotely sufficient to establish arbitrability against the Republic under Preble-Rish's alter ego or agency theories.

At this juncture, the proper procedure is illustrated in *Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002). In the district court, the defendant cross-moved to vacate the arbitrators' valuation of plaintiff's share of the parties' business. The district court vacated the arbitrators' valuation determination, concluding that the arbitrators

---

[5] In addition, the arbitration clause says nothing about delegating the question of arbitrability to the arbitrators. JA-143, 182, 219. Thus, even if the Republic had been a party to the Contracts, which it is not, arbitrability would be a question for the court, not the arbitrators.

lacked jurisdiction to decide valuation, since the arbitration agreement committed the valuation determination to a different body, "not the arbitration panel." *Id*. at 96. The district court then conducted a *de novo* review of whether the valuation question was arbitrable and concluded it was not, because the contract "removed the determination of the Final Share Purchase Price from the arbitration panel." *Id*. at 97. This Court affirmed the district court's determination that the arbitrability of the valuation issue had to be decided by the court, and agreed the court's review was *de novo*. This Court also affirmed the district court's determination, on *de novo* review, that the valuation determination was not arbitrable. *See id*.

In accordance with *Katz*, this Court should vacate the Final Award and remand with instructions that the district court conduct an independent review of whether the dispute is arbitrable against the Republic. While Preble-Rish's evidence for arbitrability is patently insufficient as a matter of law, if necessary the district court must hold an evidentiary hearing, at which Preble-Rish will bear the burden of proving the facts necessary to establish arbitrability. *See MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 64-65 (2d Cir. 2001) (remanding "for evidentiary hearing to determine whether compelling arbitration based on a veil-piercing theory is warranted," where record contained insufficient factfinding to affirm district court's determination to compel arbitration based on its sense that "something seemed obviously amiss"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*

*v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 468 (S.D.N.Y. 2018) (evidentiary hearing required "where there are disputed issues of fact on the question of whether a non-signatory to an arbitration agreement can be compelled to arbitrate"); *Penrod Mgmt. Grp.*, 2008 WL 463720, at *4 (party seeking to compel arbitration "will bear the burden of proving that Penrod is the alter ego of Nikki Beach").

In the alternative, this Court, together with vacating the arbitration award, may itself determine *de novo* whether Preble-Rish's dispute with BMPAD is arbitrable against the Republic. As shown below it is not.

### 1. The Republic Did Not Waive Its Arbitrability Challenge

Although they had no power to decide the Republic waived its arbitrability challenge—as doing so has the effect of taking jurisdiction to decide arbitrability—the arbitrators ruled that the Republic waived its challenge to arbitrability, reasoning that (i) the Republic did not raise its "non-signatory" defense in the Stay Petition, and (ii) raised it for the first time in a February 23, 2022 post-hearing submission. JA-53, 80-83. Independent review makes apparent that the Republic did not waive its challenge to arbitrability.

### a) The Republic Is Not Bound By The Arguments Or Conduct Of Harris Bricken, Which Had Neither Actual Nor Apparent Authority To Represent The Republic

First, Harris Bricken's litigation conduct cannot bind the Republic because the firm was never authorized to represent the Republic in the arbitration or in any other

litigation involving Preble-Rish.  Harris Bricken's lack of actual or apparent authority is laid out in Point I.B.2, *supra*.

>    **b)** **Even Assuming It Were Bound By Harris Bricken's Conduct, The Republic Did Not Waive Its Arbitrability Challenge**

There was no waiver of the Republic's jurisdictional challenge even assuming Harris Bricken's acts could bind the Republic.  Harris Bricken continuously raised objections to arbitrability with the panel. JA-271, 278, 282, 316, 604-605, 609.  The Republic (through the undersigned counsel) then raised the non-signatory issue within the deadline for post-hearing submissions, JA-321 and the issue was briefed by both sides.

"Where a party repeatedly objects to arbitration, [t]hese objections prevent a finding of waiver." *Dedon GmbH v. Janus et Cie*, 411 F. App'x. 361, 364 (2d Cir. 2011) (cleaned up); *see also Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*, 140 F.3d 459, 462 (2d Cir. 1998) ("A jurisdictional objection [to arbitration], once stated, remains preserved for judicial review absent a clear and unequivocal waiver.").

Thus, participation in the objected-to arbitration does not waive the jurisdictional objection.  *See*, *e.g.*, *First Options*, 514 U.S. at 946-47 (holding that arbitrability challenge was "subject to independent review by the courts" after non-signatories objected to arbitrability before arbitrators and lost); *iPayment, Inc.*, 2016 WL 1544736, at *4-5 (no waiver where non-signatories actively participated in

arbitration to defend signatory corporation and waited until after adverse award to seek court intervention, but objected repeatedly to arbitration and disputed alter ego liability); *Penrod Mgmt. Grp.*, 2008 WL 463720, at *4 (participation in arbitration prior to seeking stay, subject to jurisdictional objection, did not waive objection). The cases cited by the arbitrators (JA-82-83) to support their waiver ruling are distinguishable in obvious, material ways.[6]

As shown above, Harris Bricken raised objections to the arbitrability of the dispute and jurisdiction of the arbitrators from the outset of the arbitration. The arbitrability defense was then raised in the Republic's post-hearing submissions. The non-signatory issue was briefed, via opposition and a surreply from Preble-Rish and an opening and reply from the Republic. JA-566-594. The Republic has not uncovered any authority supporting a waiver in these circumstances.

The arbitrators were also wrong that the Republic waived its arbitrability challenge through arguments made by Harris Bricken in moving to stay and enjoin

---

[6] *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (non-signatory seeking to pierce its own corporate veil to compel arbitration); *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) ("clear intent to arbitrate where objectors never, "at any point before or during the arbitration, "objected to the process, refused to arbitrate or made any attempt to seek judicial relief"); *In re Petition of Transrol Navegaicao S.A.*, 782 F. Supp. 848, 851 (S.D.N.Y. 1991) (non-signatory could be implied to agree to arbitrate based on litigating positions in French courts asserting that court proceeding was improper because party was entitled "to resolve disputes concerning this matter through arbitration").

the arbitration. JA-80. In fact, case law makes clear that the arbitrability challenge would have been preserved had Harris Bricken declined to seek a stay at all. *See First Options*, 514 U.S. at 941 (litigation by non-signatories of motion to vacate for lack of arbitrability up to Supreme Court despite not seeking to stay or enjoin arbitration); *Nat'l Ass'n of Broad. Emps. & Technicians*, 140 F.3d at 462 ("If [a party] does not seek to enjoin the arbitration, it can raise the arbitrability issue in a judicial confirmation proceeding."). Thus, seeking court intervention to halt the arbitration for lack of arbitrability on one theory versus another cannot waive the arbitrability argument.[7]

Finally, the State Court Stay Denial Order is not res judicata as to the Republic's motion to vacate for the same reasons the Republic's subject matter jurisdiction dismissal motion is not barred: the Stay Petition and the Republic's motion to dismiss arise from different transactions, and the Republic could not have argued for vacatur of the Final Award, rendered in 2022, in a Petition to Stay arbitration filed in December 2020. *See* Point I.A, *supra*.

---

[7] The cases cited by the arbitrators, JA-80, are, again, not on point. *Cobec Braz. Trading & Warehousing Corp. of U.S. v. Isbrandtsen*, 524 F. Supp. 7, 9 (S.D.N.Y. 1980) is more than 40 years old and at odds with *First Options* and *Nat'l Ass'n of Broad. Emps. & Technicians*. *See also Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704-05 (2d Cir. 1985) (party challenging arbitrability was signatory to separate arbitration agreement).

Since the Republic did not waive arbitrability, either the district court on remand or this Court must decide, on *de novo* review, whether Preble-Rish can establish that its dispute is arbitrable against the Republic as a non-signatory to the Contracts. JA-83-85. The evidence cannot under any view support such a conclusion.

### 2. Preble-Rish Did Not Establish That BMPAD Is An Alter Ego Of The Republic

"An alter ego relationship is not easy to establish" because "duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (quoting *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021)). This presumption "is a strong one," *Gater Assets*, 2 F.4th at 55, and may be overcome only "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created." JA-83; *see Esso*, 40 F.4th at 69 (quoting *First Nat'l City Bank v. Banco Para El Comercia Exterior De Cuba*, 462 U.S. 611, 629 (1983) ("*Bancec*")).

The "touchstone inquiry" in applying *Bancec*'s "extensive control" prong is "whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations." *Gater Assets*, 2 F.4th at 55 (quoting *EM Ltd. v. Banco Cent. de la República Arg.*, 800 F.3d 78, 91 (2d Cir. 2015)). Factors relevant to this inquiry include "whether the sovereign nation: (1) uses the

instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state." *Gater Assets*, 2 F.4th at 55, n.7.

The inquiry is highly fact intensive. *See EM*, 800 F.3d at 91; JA-83-84. Preble-Rish, however, submitted no such evidence, and the Final Award cites none.

Preble-Rish raised its alter ego theory for the first time in a March 14, 2022 post-hearing letter. Preble-Rish presented no evidence, only argument, relying on selective excerpts of an uncertified English translation of BMPAD's enabling statute. *See* JA-568-571.[8]

BMPAD's enabling statute provides, among other things, that BMPAD is "an autonomous body" with separate "legal personality" and "administrative and financial autonomy." *See* JA-525; *see also* JA-489 ("BMPAD is an autonomous government agency . . . and, even though it is a state agency that is organizationally within the supervision of the MEF, it possesses an independent legal status, and its

---

[8] In response, among other things, the Republic identified six court filings in which Preble-Rish had argued that the Republic was **not** the alter ego of BMPAD. *See* JA-478-480.

54

own financial and administrative autonomy."); JA-489 ("The Republic and BMPAD are distinct entities and independent of one another, each with its own legal financial and administrative autonomy. The Law of August 1, 2007 makes clear that BMPAD is an autonomous state agency with the ability to contract on its own behalf.").

The panel disregarded the Republic's evidence, and proceeded to instead interpret the selective excerpts of Haitian law presented in Preble-Rish's letter, relying on its own interpretation of Preble-Rish's selections to conclude that the Haitian law establishing BMPAD as an autonomous agency with independent legal status, and supervised by a Board of Directors, supports its alter ego status. JA-84. While the panel was not qualified to interpret Haitian law—it opined that BMPAD's autonomous legal structure actually means the opposite—the structural features and Board composition cited by the panel do not as a matter of law or fact suggest, much less establish, that the Republic extensively controlled BMPAD's "day-to-day operations." *EM*, 800 F.3d at 92.

Indeed, "courts have consistently rejected the argument that the appointment or removal of an instrumentality's officers or directors, standing alone, overcomes the *Bancec* presumption because the exercise of such powers is not synonymous with control over the instrumentality's day-to-day operations." *Gater Assets*, 2 F.4th at 58-59 (quoting *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 203 (2d Cir. 2016)). The arbitrators rejected this controlling precedent. *See also*

55

*TransAmerica Leasing, Inc. v. La Republica de Venez.*, 200 F.3d 843, 849 (D.C. Cir. 2000) ("If . . . appointment of the directors were sufficient, then the presumption of separateness announced in *Bancec* would be an illusion."); *DRC, Inc. v. Republic of Hond.*, 71 F. Supp. 3d 201, 215 (D.D.C. 2014) (presumption of separateness not overcome where instrumentality's board was chaired by Honduras's president and included three cabinet members and president of the national legislature).

Instead, to establish "extensive control," Preble-Rish had to show "that the Republic 'use[d] its influence over these directors in order to interfere with [BMPAD's] ordinary business affairs.'" *Gater Assets*, 2 F.4th at 59 (quoting *EM*, 800 F.3d at 93). However, as Minister Boisvert explained:

> Neither the MEF [the Ministry of Economy and Finance] nor any political leader of the Republic, including the President or the Prime Minister, directs or influences BMPAD's day-to-day operations. Nor do the MEF or political leaders participate in the day-to-day operations of BMPAD, nor do they direct the board of directors of BMPAD how to vote on issues that come before the board. BMPAD does not have to receive approval for day-to-day business decisions from the MEF or Haiti's political leaders in order to conduct business – nor does it.

JA-704.

None of the four purported facts identified by the panel, either together or separately, forms a colorable basis for establishing alter ego status.

*First*, the panel stated that "all payments [by BMPAD] for product were transmitted from accounts of the Ministry of Economy and Finance ("MEF") after having been authorized by the Minister himself, Michel Patrick Boisvert." JA-84.

There is no explanation of how the Minister's authorization of payments by BMPAD suggests the Republic was controlling BMPAD's day-to-day operations. As the evidence cited by the panel shows, the payments were made from either *BMPAD* escrow accounts or a general government account, not an MEF account. JA-680-681; JA-705-706.

*Second*, the panel observed that Minister Boisvert "was personally copied on routine operational correspondence . . . ." JA-84. Minister Boisvert's passive receipt of unsolicited copies of correspondence provides no basis for a finding that the Republic actively controlled BMPAD's day-to-day operations. *See also* JA-704-705 (Minister did not request to be copied on correspondence and did not respond).

*Third*, the panel stated that at one point "the highest Government of Haiti officials" promised to authorize immediate payment of [Preble-Rish's] invoice." JA-84-85. The panel does not explain how an apparently unfulfilled promise to pay an invoice by an unnamed Haitian government official shows active control by the Republic of BMPAD's day-to-day operations.

*Fourth*, the panel stated that "according to [counsel for BMPAD], the work of his firm in this arbitration and in related cases was always overseen and directed by the President of Haiti." JA-85; *see also* JA-77-78. The identity of counsel's client contact in legal matters, however, has nothing to do with whether the Republic excessively controlled BMPAD's earlier, day-to-day business operations. In any

57

event, the panel made clear it did not believe Mr. Harris's statement. *See* JA-46-47

("As counsel for [Preble-Rish] pointed out . . ., [BMPAD] has previously alleged in

these proceedings that Mr. Saint-Fleur [BMPAD's Director-General] is the person

responsible for handling the claim for Respondents. There has been no previous

indication of any involvement of President Moise.").

The panel's misplaced reliance on *Esso*, 40 F.4th 56, underscores the lack of

evidence supporting its alter ego conclusion. The supposedly "similar facts" in *Esso*,

JA-85, are not similar at all, as they concern the Nigerian President's appointment

and removal power and the state's insertion of itself into the state petroleum entity's

business affairs and control of its transactions and budget. In addition, the Court in

*Esso* focused on an array of specific, adverse facts not present here, including that

the state paid no rent for office space on the state petroleum entity's property, and

that the two shared multiple bank accounts. *See Esso*, 40 F.4th at 70. No such facts

are present here.

### 3. Preble-Rish Did Not Establish That The Republic Is Bound To Arbitrate On An Agency Theory

Finally, the panel ruled that BMPAD was an agent of the Republic, based on the

legal principle that an agency relationship involves "agreement between the principal

and the agent that the agent will act for the principal and the principal retains a

degree of control over the agent." JA-85. The panel cited *no evidence* to support this

conclusion. JA-85. Preble-Rish also never offered any evidence showing "direct

58

manifestations" to BMPAD by the Republic of the latter's consent to have BMPAD

act on the Republic's behalf.  In re *Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290

(S.D.N.Y. 2005).  In fact, BMPAD has no authority to bind the Republic. JA-489-90.

If the arbitrators were relying on their alter ego "findings" to establish BMPAD

being subject to the Republic's control, the evidence showed no such thing as

demonstrated above.

## IV.    THE DISTRICT COURT ERRED IN CONFIRMING THE FINAL AWARD BECAUSE THE GROUNDS FOR DISMISSAL AND VACATUR ALSO PRECLUDE CONFIRMATION

Lacking subject matter and personal jurisdiction over the Republic, the district

court lacked power to grant the Petition, and the motion to confirm, accordingly,

should have been denied.

In addition, the Final Award is also not subject to confirmation under the New

York Convention because the dispute was not arbitrable against the Republic for the

reasons set forth in Point III.C above.  It is black letter law that lack of arbitrability is

a basis for denying confirmation of an award under the Convention, as this Court

held in *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II*

*L.P.*, 717 F.3d 322, 325 (2d Cir. 2013) (lack of arbitrability is a defense to

confirmation under New York Convention); *see also id.* (a finding that respondent

"never consented to submit disputes—whether about arbitrability or anything else—

to arbitration" "would compel the denial of [petitioner's] petition to confirm the

award").  For the reasons laid out in Points I.A and B. and III.B above, the Republic

59

is not precluded from invoking the absence of an arbitration agreement as a defense

to confirmation. Thus, the Final Award cannot be confirmed.

## CONCLUSION

For the foregoing reasons, the Court should reverse the Order, dismiss the

Petition or vacate the Final Award, and vacate the Final Judgment.

Dated: October 31, 2023
    New York, New York

                        **MADSEN LAW P.C.**

                        By**:** ___/s/ Bertrand Madsen_____
                              Bertrand Madsen
                        1115 Broadway, 11th Floor
                        New York, N.Y. 10010
                        Tel.:  (212) 346-7744
                        Email: bmadsen@madsenlawpc.com

                              - and -

                        **SCHLAM STONE & DOLAN LLP**

                        By:  ___/s/ Elizabeth Wolstein_____
                              Elizabeth Wolstein
                              Samuel L. Butt
                        26 Broadway, 19th Floor
                        New York NY 10004
                        Tel.:  (212) 344-5400
                        Fax:  (212) 344-7677
                        Email: ewolstein@schlamstone.com
                        Email: sbutt@schlamstone.com

                        *Attorneys for Respondent-Appellant Republic of Haiti*

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 13,934 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

   /s/ Elizabeth Wolstein     
Elizabeth Wolstein

Dated: October 31, 2023

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

| | **Page** |
|---|---|
| Opinion and Order, dated June 29, 2023 ................... | SPA-1 |
| Final Judgment, filed July 19, 2023 .......................... | SPA-27 |
| 9 U.S.C. § 9 ............................................................... | SPA-29 |
| 9 U.S.C. § 10 ............................................................. | SPA-30 |
| 28 U.S.C. § 1604 ...................................................... | SPA-31 |
| 28 U.S.C. § 1605 ...................................................... | SPA-32 |
| 28 U.S.C. § 1608 ...................................................... | SPA-38 |
| 28 U.S.C. § 1738 ...................................................... | SPA-41 |
| CPLR 7503 ................................................................ | SPA-42 |
| CPLR 7511 ................................................................ | SPA-43 |

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PREBLE-RISH HAITI, S.A.,

                        Petitioner,                    22-cv-7503 (PKC)
                                                  21-cv-6704 (PKC)
        -against-

                                        OPINION AND ORDER

REPUBLIC OF HAITI, BUREAU DE
MONÉTISATION DES PROGRAMMES D'AIDE
AU DÉVELOPPEMENT,

                        Respondents.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Before this Court is a petition by Preble-Rish Haiti, S.A. ("PRH") to recognize,

confirm, and enforce a Final Award of an international arbitration panel in its favor against the

respondents Republic of Haiti ("ROH") and the Bureau de Monétisation des Programmes d'Aide

au Développement ("BMPAD"), a Haitian governmental agency.  ROH opposes the petition and

has filed a cross-motion to dismiss the petition, or in the alternative, to vacate the arbitration

award.[1]  ROH argues that it is not a party or signatory to the underlying arbitration agreements

and that accordingly (1) the Court lacks subject-matter jurisdiction to decide the case because no

exception to the Foreign Sovereign Immunities Act ("FSIA") applies, and (2) even if the Court

has jurisdiction, the dispute was not arbitrable against ROH as a non-signatory.  ROH also

argues the Court lacks personal jurisdiction over it because PRH has not followed the proper

FSIA service procedures.

---

[1] BMPAD has not appeared in the action on this petition.

SPA-2

This dispute has spread across multiple forums, and as a result, several of ROH's arguments are precluded.  For the reasons discussed below, PRH's petition will be granted, and the cross-motion denied.

Additionally, ROH's related motion from relief from judgment, or alternately to amend the judgment, on Docket 21-cv-6704 (PKC), appears to be moot.  The parties will have 14 days from the date of this Order to show cause why the motion is not moot.

Familiarity with the filings and the Court's orders in these matters (22-cv-7503 (PKC) and 21-cv-6704 (PKC)) and the related matters (21-cv-4960 (PKC) and 21-cv-9040 (PKC)) is assumed.

BACKGROUND

I.    Fuel Contracts.

PRH is a company organized under the laws of Haiti with a principal place of business in Pétion-Ville, Haiti.  (ECF 1 ("Petition") at 3.)[2]  PRH provides infrastructure-project management and material supply, and as related to the at-issue claims against respondents, also acted as a marine transportation fuel supplier and importer of record.  (Id. at 3–4.)  Respondents are foreign entities organized under the laws of Haiti with a principal place of business in Port-au-Prince, Haiti.  (Id. at 4.)

BMPAD, an agency of the government of Haiti, is the only institution authorized to order petroleum products to make them available for consumption throughout the country.  (Doc 6-1 (Corrected Final Award) ("Final Award") ¶ 70.)  On May 13, 2020, PRH and BMPAD entered into three contracts (the "Contracts") whereby PRH agreed to source, ship, and deliver fuel for a fee.  (21-cv-4960 (PKC), ECF 60 (the "Sept. 2021 Order") at 2; Petition at 4.)

---

[2] Unless otherwise indicated, ECF citations refer to 22-cv-7503 (PKC).

SPA-3

Specifically, PRH agreed to make six monthly shipments of certain fuels, based on the total monthly quantity requested by BMPAD.  (Sept. 2021 Order at 2.)  The first four fuel orders proceeded uneventfully, but BMPAD allegedly fell behind on payments on the fifth order.  (Id.) Though payment had yet to be received, PRH continued with the sourcing and shipping process, sending reminders to BMPAD as the invoices became due and ships were loaded with BMPAD's fuel.  (Id.)  BMPAD acknowledged receipt of shipping documents for the Haiti-bound ships carrying the unpaid fuel and took possession of the fuel as the ships arrived in Haiti.  However, payment was never sent to PRH.  Eventually, PRH halted all fuel shipments to BMPAD and now alleges that BMPAD and ROH owe damages stemming from the unpaid invoices for fuel delivered, including lost profits.  (Id.)

II.     Initial Arbitration Proceedings.

The three contracts at issue contained the following identical arbitration clause:

**Article 20.  ARBITRATION AND LEGISLATION**

In the event of a dispute between the Buyer and Seller under this Contract, the dispute shall be submitted by either party to arbitration in New York before three arbitrators.  The Party initiating the arbitration shall provide written notice of its intention to submit the matter to arbitration. . . . The decision of the arbitrators shall be final, conclusive and binding on all Parties. Judgment upon such award may be entered in any court of competent jurisdiction. . . .

(Final Award ¶ 4.)  Pursuant to these arbitration clauses, PRH served a notice demanding arbitration of its claims against ROH and BMPAD on November 20, 2020.  (Petition at 11; Sept. 2021 Order at 2; Final Award ¶ 1.)  The Notice began:

We are attorneys representing Preble-Rish Haiti SA ("PRH") who demand arbitration against the Republic of Haiti, by and through its agent Bureau de Monétisation de Programmes d'Aide au Développement" (BMPAD) (collectively referred to as "BMPAD") for disputes arising from BMPAD's breach of the

3

SPA-4

three referenced contracts, copies of which are attached hereto (the "Contracts").

(Final Award ¶ 2.)  The Notice was sent to (1) the email address specified in the Contracts, which belonged to Fils Aimé Ignace Saint-Fleur, the Director General of BMPAD, (2) other BMPAD officials, and (3) Michel Patrick Boisvert, the Minister of Economy and Finance of the Republic of Haiti.  (Id. ¶ 3.)

The arbitration notice identified Robert G. Shaw as PRH's appointed arbitrator, called upon BMPAD to appoint its own arbitrator, and indicated that if "BMPAD fails to appoint an arbitrator within 10 days, PRH will select an arbitrator on [BMPAD's] behalf.  Both arbitrators will then appoint a third arbitrator."  (Id. ¶ 5.)  BMPAD did not appoint the second arbitrator by the required deadline of November 30, 2020, and PRH appointed LeRoy Lambert.  (Id. ¶ 6.)  On December 1, 2020, Mr. Shaw and Mr. Lambert appointed Louis Epstein as the third and final arbitrator on the panel, and Mr. Epstein notified the parties of his appointment.  (Id.)

On December 4, 2020, Dan Harris, a partner from the law firm Harris Bricken Sliwoski LLP ("Harris Bricken"), wrote to the panel, stating, "We are counsel for the Government of Haiti (GOH) and its Bureau de Monétisation de Programmes d'Aide au Développement (BMPAD) and this letter is in response to the arbitration you purport to have brought against BMPAD."  (Id. ¶ 7.)  The letter objected to the arbitration, demanded PRH dismiss it, and stated that Harris Bricken would seek relief in court if the arbitration was not dismissed.  (Id.)

On March 24, 2021, PRH submitted its Initial Claim Statement and Request for an Interim Partial Award of Security to the arbitration panel.  (Petition at 12; Final Award ¶ 9.)  On March 27, 2021, Harris Bricken responded on behalf of ROH and BMPAD via e-mail, stating that respondents did not recognize the panel's jurisdiction and had filed in state court a petition

4

SPA-5

for a stay and a motion for preliminary injunction and request for a temporary restraining order.

(Petition at 12–13; Final Award ¶ 10.)  Harris Bricken stated:

> ROH reserves all of its rights in connection with this purported
> arbitration, the New York action, and the lawsuit it will file in
> Haiti against PRH. Because ROH does not waive or intend to
> jeopardize its position of non-arbitrability under CPLR 7503(b), it
> has no intention of filing a Statement of Defense or posting a bond
> in this action.

(Final Award ¶ 10.)  As discussed in the following section, the petition for a stay was denied.

On April 5, 2021, in the absence of injunctive relief from state court, the panel

ruled that the arbitration would proceed.  (Id. ¶¶ 11–13.)  On August 6, 2021, the arbitration

panel issued a Partial Final Award granting PRH's petition for a pre-award security and directing

BMPAD to deposit $23,043,429.79 into an escrow account.  (Id. ¶ 40.)  On January 26, 2022,

this Court issued an Opinion and Order confirming the Partial Final Award, and the Clerk of

Court entered a judgment against BMPAD.  (21-cv-6704 (PKC), ECF 48, 49.)  On February 1,

2022, the Court issued an order clarifying that as used in the January 26 Opinion, "BMPAD" was

inclusive of both BMPAD and ROH, and on the Court's direction the Clerk amended the

judgment accordingly.  (21-cv-6704 (PKC), ECF 53, 56.)

### III.    State Court Proceedings.

On December 22, 2020, a petition was filed in the Supreme Court of New York,

County of New York, by "Petitioners, REPUBLIC OF HAITI ('ROH'), BUREAU DE

MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT ('BMPAD')

(together, 'Petitioners'), by and through their attorneys, Harris Bricken Sliwoski LLP."  Republic

of Haiti et al. v. Preble Rish Haiti SA, Index No. 657237/2020, Doc. 1 (N.Y. Sup. Ct. Dec. 22,

2020).  (Final Award ¶ 8; ECF 38-1.)  The petition sought an order to stay the arbitration

pursuant to section 7503(b) of the N.Y. C.P.L.R.  The petition did not dispute that the parties had

entered into an agreement containing an arbitration clause but instead argued that the arbitration

demand was procedurally defective and that the arbitration clauses were invalid under Haitian

law.  (Final Award ¶ 11.)

On September 27, 2021, Justice Andrew Borrok of New York County's

Commercial Division denied the petition to stay the arbitration, concluding that the "petitioners

fail[ed] to establish that the arbitration provisions are illegal under Haitian law."  Republic of

Haiti et al., Index No. 657237/2020, Doc. 68 (N.Y. Sup. Ct. Sept. 27, 2021).  (21-cv-6704

(PKC), ECF 29-1.)  ROH and BMPAD appealed the decision, and on December 7, 2021, a full

panel of the Appellate Division, First Department, vacated an interim stay on the enforcement of

Justice Borrok's order pending the hearing and determination of the appeal.  (21-cv-6704 (PKC),

ECF 34.)   On April 12, 2022, the Appellate Division affirmed Justice Borrok's decision denying

the petition to stay arbitration and granting the cross-motion to compel arbitration.  Republic of

Haiti v. Preble Rish Haiti SA, 204 A.D.3d 482 (1st Dep't 2022).  (21-cv-6704 (PKC), ECF 84.)

IV.    Arbitration Hearing and Final Award.

On February 7, 2022, the final hearing on the merits was held by videoconference.

(Petition at 17.)  PRH submitted a pre-hearing statement, but respondents did not.  (Id.)  PRH

presented three witnesses, and counsel for respondents cross-examined all three.  (Id.)  After

closing arguments, the hearing was adjourned, and post-hearing submissions were sent to the

panel on February 23, 2022.  (Id.)

Also on February 23, 2022, the panel received a letter from Elizabeth Wolstein of

Schlam Stone & Dolan LLP.  The letter stated that her firm, as well as the Madsen Law Firm,

had been retained to represent ROH in connection with the arbitration.  (Final Award ¶ 62.)  The

letter asserted that ROH was not a party to the Contracts, had not signed the arbitration

6

agreement, and asked the panel to clarify that the "Partial Final Award did not run against the ROH and that ROH was not a respondent in this arbitration." (Id.) After receiving additional submissions from both PRH and ROH, the panel declined to reopen the Partial Final Award and determined that it would address the issues raised in the letter in its final award. (Id. ¶¶ 64–66.)

On August 23, 2022, the panel issued the Final Award and found that PRH is entitled to recover $28,184,756.65 from respondents. (Petition at 18; Final Award at p. 75.) Among other issues, the panel rejected the argument made on behalf of ROH that it was not bound by the Contracts and the arbitration agreement—the panel determined that (1) ROH had waived this defense when it failed to assert it in the petition to stay arbitration that it brought in New York Supreme Court, that (2) ROH was bound by its conduct and appearance in the New York arbitration, that (3) BMPAD was the alter ego for ROH, and that (4) at all relevant times, BMPAD acted as agent for ROH. (Petition at 18–19; Final Award ¶¶ 41–51.)

PRH filed a petition to this Court pursuant to the New York Convention and the Federal Arbitration Act ("FAA"), seeking an order recognizing, confirming, and enforcing the Final Award against respondents jointly and severally. (Petition at 1–2.) ROH opposes the petition, and has moved to either dismiss the petition or, in the alternative, to vacate the Final Award. (ECF 33.)

V.     Service Attempts.

PRH asserts it has served both respondents by multiple means. The Contracts provide that "[a]ll correspondence between the Parties subject to this Contract shall be addressed to" Mr. Ignace Fils Aimé Saint Fleur, the Executive Director of BMPAD, with communications "deemed to have been received . . . if sent by email." (ECF 31-1 at 16, 31-3 at 16, 31-5 at 15.)

7

A few days after filing the instant petition, counsel for PRH provided to Mr. Saint Fleur—at the email address listed in the Contracts—copies of the following documents:

 (1) Petition to Confirm Final Award (in English)

 (2) Summons to BMPAD (in English)

 (3) Summons to ROH (in English)

 (4) Notice of Suit (in English)

 (5) Petition to Confirm Final Award (in French)

 (6) Summons to BMPAD (in French)

 (7) Summons to ROH (in French)

 (8) Notice of Suit (in French)

(ECF 38-12.)  The email itself was sent in both English and French.  (Id.)

On September 12, 2022, upon request from PRH, the Clerk of Court issued a summons to respondents at the following addresses: (1) "REPUBLIC OF HAITI c/o Foreign Minister Jean Victor Geneus, 5A, Delmas 60, Musseau, Port-au-Prince," (2) "BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE AU DÉVELOPPEMENT, No.12 Boulevard Harry Truman, Port-au-Prince, Haiti," and (3) "BUREAU DE MONÉTISATION DES PROGRAMMES D'AIDE AU DÉVELOPPEMENT, c/o The Consulate General of Haiti in New York 815 2nd Ave 6th floor, New York, NY 10017." (ECF 14, 15, 16.)  A week later, the Clerk mailed by FedEx copies of the following documents to each of the three addresses:

 (1) A copy of the Notice and Summons (in English and French)

 (2) PRH's Petition to Confirm (in English and French)

 (3) The Final Award

 (4) This Court's Order to Show Cause why the petition should not be confirmed  (ECF 10.)

 (5) A certificate of accuracy for the French translations

SPA-9

(ECF 19, 20, 21.)  FedEx later reported that the package sent to ROH in Haiti "could not be located" after becoming "stuck" in Haitian customs.  (ECF 38-13.)

On October 14, 2022, the Clerk mailed an additional service package to ROH at the following address: "Haitian Foreign Minister Jean Victor Geneus, Ministere des Affaires Etrangeres et des Cultes de la Republique d'Haiti Jean Victor Geneus, 5A Delmas 60, Musseau, Port-au-Prince, Haiti."  (ECF 37.)  On October 19, 2022, PRH learned that this package was being held in Miami because FedEx had suspended service in Haiti due to ongoing civil unrest.  (ECF 38-14 at 2.)  On October 20, 2022, PRH requested that the Clerk, pursuant to 28 U.S.C. § 1608(a)(4), dispatch copies of the service package to the Secretary of State to be served upon ROH through diplomatic channels.  (Id.)  On November 1, 2022, PRH filed an affidavit of service for the October 14 summons to ROH, which included an attached FedEx proof-of-delivery showing that it was signed for by a "M.THEODORE" and a delivery date of October 28, 2022.  (ECF 41.)

DISCUSSION

I.    Applicable Law.

"An application to confirm a foreign arbitral award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802, 809 (2d Cir. 2022) (quotation marks omitted), cert. denied, 143 S. Ct. 786 (2023).  "The review of arbitration awards is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  Id. (ellipsis and quotation marks omitted).  "That review is 'extremely deferential' to the findings of the

SPA-10

arbitration panel." Id. (quoting Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

Where an arbitration "involve[s] parties domiciled or having their principal place of business [outside of the United States,]" it is subject to the New York Convention as codified in 9 U.S.C. §§ 201–08. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (quotation marks omitted). Where an arbitration is conducted in the United States, "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." Scandinavian Reins. Co. Ltd. v. St. Paul Marine & Fire Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("[T]he FAA and the New York Convention work in tandem, and they have 'overlapping coverage' to the extent that they do not conflict."). Under Chapter 2 of the FAA, which implements the United States' obligations under the New York Convention, actions or proceedings that fall under the New York Convention include "arbitration agreement[s] or arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered as commercial." CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 71 (2d Cir. 2017) (quoting 9 U.S.C. § 202).

PRH, BMPAD, and ROH are entities organized under the laws of Haiti and have their principal places of business in Haiti, which is also a party to the New York Convention. The arbitration between PRH and respondents occurred in the United States, specifically in New York, as directed by the Contracts, contracts which created a legal and commercial relationship between PRH and respondents. Furthermore, the Final Award here is "not considered domestic," because the arbitration "involv[ed] parties domiciled or having their principal place of business [in Haiti,] outside the enforcing jurisdiction" of the United States. Bergesen v. Joseph Muller

10

SPA-11

Corp., 710 F.2d 928, 932 (2d Cir. 1983).  Accordingly, the Court will apply the New York

Convention, its implementing legislation, 9 U.S.C. § 201 et seq., and the domestic provisions of

the FAA, to the extent not in conflict with the Convention.

   The Court will address the jurisdictional challenges raised by ROH before

proceeding to the merits.

  II.  The Court has Subject-Matter Jurisdiction Over the Action Against ROH.

   The FSIA is "the sole basis for obtaining jurisdiction over a foreign state."

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  Under the

FSIA, federal district courts have original jurisdiction of:

> [A]ny nonjury civil action against a foreign state as defined in
> section 1603(a) of this title as to any claim for relief in personam
> with respect to which the foreign state is not entitled to immunity
> either under sections 1605-1607 of this title or under any
> applicable international agreement.

28 U.S.C. § 1330(a).  Section 1604 of Title 28 in turn provides that a "foreign state shall be

immune from the jurisdiction of the courts of the United States . . . except as provided in sections

1605 to 1607 of this chapter."  Id. § 1604.  "Sections 1604 and 1330(a) work in tandem: § 1604

bars federal and state courts from exercising jurisdiction when a foreign state is entitled to

immunity, and § 1330(a) confers jurisdiction on district courts to hear suits brought by United

States citizens and by aliens when a foreign state is not entitled to immunity."  Argentine

Republic, 488 U.S. at 434.  "[T]he FSIA 'must be applied by the district courts in every action

against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the

existence of one of the specified exceptions to foreign sovereign immunity.'"  Id. at 434–35

(quoting Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 (1983)).

11

The FSIA defines a "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a); see Turkiye Halk Bankasi A.S. v. United States, 143 S. Ct. 940, 946 (2023).  Section 1603 further provides that:

> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> > (1) which is a separate legal person, corporate or otherwise, and
> >
> > (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and . . .

28 U.S.C. § 1603(b).  Both ROH and its agency BMPAD fall within the FSIA's definition of "foreign state," and accordingly for this Court to have subject-matter jurisdiction over this action one of the immunity exceptions in sections 1605 through 1607 must apply.  See Turkiye Halk Bankasi A.S., 143 S. Ct. at 946 ("[T]he FSIA codifies a baseline principle of immunity for foreign states and their instrumentalities" and "then sets out exceptions to that principle."); Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991) ("[U]nless one of the statutory exceptions applies, a federal court is without subject matter jurisdiction to hear the instant action.").

PRH urges that two exceptions in section 1605 apply here: the implied waiver exception, 28 U.S.C. § 1605(a)(1), and the arbitration exception, id. § 1605(a)(6).  Section 1605(a)(1) provides that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
>
> > (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may

purport to effect except in accordance with the terms of the waiver;

28 U.S.C. § 1605(a)(1).  "Federal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly."  Shapiro, 930 F.2d at 1017.  The Second Circuit has identified certain "unmistakable" examples of waiver, such as "where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity."  Id. (quoting H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6617).  Courts are "reluctant to find an implied waiver where the circumstances were not similarly unambiguous."  Id.

As a general matter, courts do not find that a foreign state waives immunity before a court in the United States "simply because a sovereign entered into a contract that named a third country for arbitration or designated the laws of a third nation to govern the interpretation of the contract."  Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 577 (2d Cir. 1993), as amended (May 25, 1993).  But "when a country becomes a signatory to the [New York] Convention, by the very provisions of the Convention, the signatory State must have contemplated enforcement actions in other signatory States."  Id. at 578.  The Second Circuit in Seetransport concluded that where (1) a foreign state was a signatory to the New York Convention, (2) the state—or an instrumentality or agency thereof—"entered into a contract . . . that had a provision that any disputes would be submitted to arbitration," and then (3) "participated in an arbitration in which an award was issued against it," the contracting entity had waived any sovereign immunity defense and the district court would have subject-matter jurisdiction.  Id. at 578–79; see Blue Ridge Invs., LLC v. Republic of Argentina, 902 F. Supp. 2d 367, 373 (S.D.N.Y. 2012) ("Implied waiver is commonly found in cases involving the

13

SPA-14

enforcement of arbitration awards, however, so long as the award is rendered pursuant to a convention to which the foreign state is a signatory, and the convention provides for recognition and enforcement of the award in contracting states."), aff'd sub nom. Blue Ridge Invs., L.L.C. v. Republic of Argentina, 735 F.3d 72 (2d Cir. 2013).

Section 1605(a)(6) codifies the so-called "arbitration exception," which denies immunity in any case:

> [I]n which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if
>
> > (A) the arbitration takes place or is intended to take place in the United States,
> >
> > (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).  "The [New York] Convention, as implemented by chapter two of the FAA, is exactly the kind of treaty which the arbitration exception contemplates."  Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine, 158 F. Supp. 2d 377, 382 (S.D.N.Y. 2001), aff'd sub nom. In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488 (2d Cir. 2002).  But for the "immunity exception to apply here, the relevant arbitration agreement must have been 'made by'" the foreign state.  Gater Assets Ltd. v. AO Moldovagaz, 2 F.4th 42, 66 (2d Cir. 2021).

Applying the above principles, the Court has subject-matter jurisdiction over this action with respect to BMPAD under both sections 1605(a)(1) and 1605(a)(6).  It is undisputed

14

SPA-15

that ROH is a signatory to the New York Convention.  (See ECF 33 at 15.)  The Contracts, to which BMPAD—an agency of ROH—is a party, expressly provide that disputes would be submitted to arbitration in New York.  No party disputes that BMPAD appeared in the arbitration.  Direct application of Seetransport instructs that BMPAD is not entitled to immunity.

The parties disagree, however, over the Court's jurisdiction as to ROH.  PRH asserts that ROH is likewise without immunity because ROH is also party to the Contracts, and the Final Award is against both BMPAD and ROH.  In opposition, ROH argues that it is "undisputed" that ROH was not a party to the Contracts, that it did not participate in the arbitration, and therefore neither the arbitration exception nor the implied waiver exception can provide subject-matter jurisdiction over an action against it.  (ECF 33 at 19; ECF 49 at 4.)  The Court agrees with PRH because ROH's arguments are barred by principles of res judicata.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007).  "Thus, the doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  Id.

The Full Faith and Credit Act requires that when determining the preclusive effect of state judgments, the courts "must accept the rules chosen by the State from which the judgment is taken."  Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); 28 U.S.C. §1738.  A "threshold question[]" on a motion to stay or compel arbitration under N.Y. C.P.L.R. 7503 is "whether the parties made a valid agreement to arbitrate."  Rockland Cnty. v. Primiano Const. Co., 51 N.Y.2d 1, 6 (1980); see Morgan v. Nikko Sec. Co. Int'l, 691 F. Supp. 792, 796

SPA-16

(S.D.N.Y. 1988) ("The question whether an agreement to submit disputes to arbitration has been made is a legal one that the court must decide.") (citing <u>Matarasso v. Cont'l Cas. Co.</u>, 56 N.Y.2d 264, 267 (1982)); David D. Siegel, <u>N.Y. Prac.</u> § 589 (6th ed. December 2022 update) ("The first [threshold question] is the obvious question of whether the dispute is arbitrable, which can embrace such constituent issues as whether a valid agreement to arbitrate was made and complied with or whether, if the arbitration clause is a narrow one, the particular dispute is within it.").

A state court's treatment of this threshold issue is entitled to preclusive effect. Under section 7503, where a party has "moved to stay arbitration, and the stay ha[s] been denied," that party is "not . . . allowed to raise these questions in a proceeding to confirm an arbitral award in the [opposing party's] favor." <u>Morgan</u>, 691 F. Supp. at 799 (collecting cases). The results of a motion to compel are similarly binding. Where a party brings "a proceeding to compel arbitration . . . and prevails in it," the opposing party's "failure to participate in the arbitration is at his own risk" and that party "is foreclosed from later resisting the award based on the threshold questions: [the opposing party] is bound by the determination that the dispute was arbitrable." Siegel, <u>N.Y. Prac.</u> § 592.

ROH and BMPAD jointly brought a petition in New York Supreme Court to stay arbitration under section 7503(b). The form UCS-840 "Request for Judicial Intervention" filed the same day as the petition lists ROH and BMPAD as separate parties, both as "Plaintiff/Petitioner." <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 20 (N.Y. Sup. Ct. Dec. 12, 2020). In support of the petition, a signed, sworn, and notarized verification from BMPAD's director was submitted, which began, "I am the Director of BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT (BMPAD), an

16

SPA-17

agency of REPUBLIC OF HAITI, which are both Petitioners in this action." <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 43 (N.Y. Sup. Ct. Jan. 18, 2021).  (ECF 38-3.)  The petition itself stated "Petitioners REPUBLIC OF HAITI and BUREAU DE MONÉTISATION DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT are Haitian entities located in the Republic of Haiti. <u>Petitioners have a contract for product with Respondent.</u>" <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 1 ¶ 4 (N.Y. Sup. Ct. Dec. 20, 2020) (emphasis added).  (ECF 38-1)

On September 27, 2021, Justice Andrew Borrok denied the petition to stay the arbitration and granted PRH's cross-motion to compel arbitration. <u>Republic of Haiti et al.</u>, Index No. 657237/2020, Doc. 68 (N.Y. Sup. Ct. Sept. 27, 2021).  The Order denying the stay petition stated, "It is beyond dispute that the parties freely and unequivocally agreed to arbitrate all of their disputes in New York" and that "[t]he petitioners," ROH and BMPAD, "drafted the very agreements containing the arbitration clauses." <u>Id.</u>  The Appellate Division, First Department, affirmed Justice Borrok's Order on April 12, 2022. <u>Republic of Haiti</u>, 204 A.D.3d at 482.

Justice Borrok's decision is a final judgment on the merits by a court of competent jurisdiction in a case involving the same parties and underlying claim as the instant action.  ROH—as the party bringing the petition before Justice Borrok—is precluded from re-litigating issues that "were or could have been raised" in that proceeding.  As ROH brought a motion to stay—which was denied—and PRH brought a cross-motion to compel arbitration against ROH—which was granted—ROH cannot now deny that it had a valid arbitration agreement with PRH.[3]  As such, ROH is not entitled to FSIA immunity, and the Court has subject-matter jurisdiction over the action against it.

---

[3] ROH asserts that it should not be bound by Justice Borrok's Order because the firm that represented it in that action, Harris Bricken, "never had authority to claim it represented the Republic." (ECF 33 at 4.)  While the Court notes the serious ethical implications of this suggestion, federal district courts do not sit in review of state court judgments, but instead—as noted above—must give those judgments the "full faith and credit . . . as they have by

SPA-18

III.     <u>ROH was Properly Served, and the Court has Personal Jurisdiction over ROH.</u>

ROH also moves to dismiss the petition for lack of proper service under Rule

12(b)(5), Fed. R. Civ. P., and lack of personal jurisdiction under Rule 12(b)(2).

The FSIA provides that personal jurisdiction exists over a foreign state where a

court has subject-matter jurisdiction under section 1330(a) and where service has been made

under section 1608.  28 U.S.C. § 1330(b); <u>see</u> <u>Shapiro</u>, 930 F.2d at 1020 ("Under the FSIA . . .

personal jurisdiction equals subject matter jurisdiction plus valid service of process.").  In

<u>Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.</u>, 49 F.4th 802 (2d

Cir. 2022), the Second Circuit clarified how the FSIA and FAA service provisions function

together in an action to confirm an arbitration award under the New York Convention against a

foreign state.  Section 208 of the Convention's implementing legislation incorporates section 9 of

the FAA, which specifies that "notice of the application" must be served "in like manner as other

process of the court."  <u>Id.</u> at 811 (quoting 9 U.S.C. § 9).  Looking to the general service rules,

Rule 4(j)(1), Fed. R. Civ. P., directs that "[a] foreign state or its political subdivision, agency, or

instrumentality must be served in accordance with 28 U.S.C. § 1608."

Section 1608 directs service to be completed through "delivery of a copy of the

summons and complaint" by a cascading series of options.  <u>Commodities & Minerals Enterprise

Ltd.</u> explained, however, that "a summons is not required to properly effect service when seeking

confirmation of a foreign arbitral award against a foreign instrumentality," reasoning that the

FAA defines what documents are to be served (i.e., notice of the application), and that importing

the requirement to serve a "summons and complaint" into the FAA makes little sense "because

---

law or usage in the courts" of New York.  28 U.S.C. § 1738.  The Court must "give the same preclusive effect to a
state-court judgment as another court of that State would give.'"  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>,
544 U.S. 280, 293 (2005).  If ROH seeks to attack the state court judgment against it, the proper forum would be the
courts of New York.  <u>See</u> <u>id.</u> at 284.

motions to confirm arbitral awards are not commenced by the filing of a complaint."  49 F.4th at 813.  In this context, section 1608 "answers how to serve process" by specifying "the 'manner' in which notice of the application must be served."  Id.

Section 1608(a)(1) provides that service "upon a foreign state or political subdivision of a foreign state" shall be made "by delivery of a [notice of the application] in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision."  Section 1608(b)(1) contains a parallel "special arrangement" provision for service upon "an agency or instrumentality of a foreign state."  Sections 1608(a)(2)-(4) and (b)(2)-(4) address alternate methods of service by means of international service conventions, mail, or diplomatic channels.  The Court need not address whether service has been properly made under these other provisions, as they only apply where "no special arrangement exists," 28 U.S.C. § 1608(a)(2), and here PRH has properly served both BMPAD and ROH under the "special arrangement" provisions of section 1608(b)(1).

Each of the fuel contracts, under "Article 24. NOTICE," include the following provision:

All correspondence between the Parties subject to this Contract shall be addressed to:

**For the Buyer:**

Attention:   Mr. Ignace Fils Aimé SAINT FLEUR

Executive Director of BMPAD

12, Boulevard Harry Truman, Port-au-Prince, HAITI

Bureau for the Monetization of Development

19

**SPA-20**

> Assistance Programs (BMPAD)
>
> (BMPAD) Tel.: 509 28130933/509 29408625
>
> Email: ignace.saintfleur@bmpad.gouv.ht
>
> . . .
>
> Any notice or communication will be deemed to have been received:
>
> . . .
>
>> c) if sent by e-mail upon delivery, in each case unless delivered on a non-business day or after 5:00 p.m. (local time at the Receiving Party's location) on a business day. If it is delivered on a non-business day or after 5:00 p.m. on a business day, it will be deemed to have been delivered on the next business day. Business day for these purposes means a calendar day other than a Saturday, Sunday or holiday in the country and region in which the Recipient has its principal place of business.

(See, e.g., ECF 31-1.)  These provisions covering "all correspondence" between the contracting parties qualify as a "special arrangement for service" between PRH and respondents within the meaning of section 1608(a)(1).  See Arb. Between Space Sys./Loral, Inc. v. Yuzhnoye Design Off., 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001) (Koeltl, J.) ("Although service of process is not specifically mentioned in § 26, it falls within the category of '[a]ll notices and communications between the parties' in § 26.1. Thus, § 26 does establish a special arrangement for the service of process under the FSIA.") (collecting cases).  On October 6, 2022, counsel for PRH directed to both respondents at the email listed above—in both English and French—copies of its petition and notice of suit.  (ECF 38-12.)

ROH's brief in support of its cross-motion argues that PRH's service was insufficient because it failed to issue a timely summons.  (See, e.g., ECF 33 at 16 n.7.)  This

argument is foreclosed by the decision in <u>Commodities & Minerals Enterprise Ltd.</u>[4]  ROH's

remaining argument regarding section 1608(a)(1) is that ROH is not subject to the special

arrangement provisions of the Contracts because it is not a party to those contracts.  But as

discussed above, this argument is precluded by the judgment in the state court action.  Both

BMPAD and ROH have been properly served and the Court has personal jurisdiction over them.

 The Court proceeds to the merits of the petition to confirm the Final Award.

 IV. <u>PRH's Petition to Confirm the Final Award Will Be Granted.</u>

 A petition to confirm an arbitration award should be "treated as akin to a motion

for summary judgment based on the movant's submissions."  <u>D.H. Blair & Co., Inc. v.</u>

<u>Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006).  Summary judgment is appropriate where the record

reveals that there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.; <u>see also</u> <u>McElwee v. Cnty. Of Orange</u>,

700 F.3d 635, 640 (2d Cir. 2012).  "Normally, confirmation of an arbitration award is a summary

proceeding that merely makes what is already a final arbitration award a judgment of the court,

and the court must grant the award unless the award is vacated, modified, or corrected."  <u>D.H.</u>

<u>Blair & Co.</u>, 462 F.3d at 110 (quotation marks omitted).  "Only a barely colorable justification

for the outcome reached by the arbitrators is necessary to confirm the award."  <u>Id.</u> (quotation

marks omitted).

 In a case governed by the New York Convention, "[t]he court shall confirm the

award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of

the award specified in the said Convention."  <u>Scandinavian Reins. Co.</u>, 668 F.3d at 78.  "[T]he

party opposing enforcement of an arbitral award has the burden to prove that one of the seven

---

[4] ROH's brief was submitted the same day <u>Commodities & Minerals Enterprise Ltd.</u> was published.

SPA-22

defenses under the New York Convention applies. . . .  The burden is a heavy one, as the showing required to avoid summary confirmance is high."  Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) (quotation marks omitted).  The Court previously determined that none of these defenses applied when confirming the Partial Final Award.  (21-cv-6704, ECF 48.)

The FAA provides limited grounds for vacating an arbitration award.  9 U.S.C. § 10(a).  Section 10(a)(4) of the FAA provides that the district court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The Second Circuit has "consistently accorded the narrowest of readings to section 10(a)(4)."  Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011) (quotation marks omitted). "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement."  Id.

BMPAD, insofar as it is an entity distinct from ROH, has not appeared or responded to the petition.  ROH does not claim to represent BMPAD in this action, and ROH's primary objections are explicitly premised on the separability of the two respondents.  "[A] district court should treat an unanswered . . . petition to confirm/vacate as an unopposed motion for summary judgment."  D.H. Blair & Co., 462 F.3d at 110.  Even where a motion for summary judgment is unopposed, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

SPA-23

RPH has met that burden here.  There is no genuine dispute among the parties that BMPAD agreed to arbitrate the Contracts, participated in the arbitration, and is bound by the determination of the arbitration panel; nor does the record indicate any genuine dispute regarding these facts.  The Final Award itself addresses the material issues at length, and it provides more than the "barely colorable justification for the outcome" required.  <u>D.H. Blair & Co.</u>, 462 F.3 at 110 (quotation marks omitted).  With regards to BMPAD, the Court therefore concludes that RPH "is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  The Court will accordingly confirm the Final Award against BMPAD.

For its part, ROH concedes that the Final Award is within the scope of the New York Convention, and it does not specifically raise any of the seven defenses.  (ECF 33 at 18.)  Instead, ROH challenges the award under section 10(a)(4) of the FAA and argues that the Final Award should be vacated because "the arbitrators exceeded their powers."  (<u>Id.</u> at 19 (citing 9 U.S.C. § 10(a)(4)).)  ROH's arguments expressly invoke "the question of arbitrability."  (<u>Id.</u>)  ROH asserts that it "did not agree to submit the issue of arbitrability to the arbitrators because the Republic was not a party or signatory to the arbitration agreements at all," and it proceeds to raise several arguments premised on this assertion.  (<u>Id.</u>)  ROH ultimately suggests the Court "must decide, on <u>de novo</u> review, whether Preble-Rish can establish that its dispute is arbitrable against [ROH], as a non-signatory."  (<u>Id.</u> at 28.)

But as discussed above, the question of whether ROH was a party to the arbitration agreements and whether the parties had submitted the dispute to arbitration—i.e., "the question of arbitrability"—has already been judicially determined.  This was the very issue in the action before Justice Borrok, an action ROH instigated and lost.  The final judgment before Judge Borrok "precludes the parties or their privies from relitigating issues that were or could

23

SPA-24

have been raised in that action." EDP Med. Comput. Sys., 480 F.3d at 624 (quotation marks omitted).[5]

The petition to confirm the Final Award will be granted, and the motion to vacate the award will be denied.

V.    The Motion for Relief from, or Alternatively to Amend, the Partial Final Award Judgment is Moot.

Also pending before the Court is ROH's motion for relief from the Partial Final Award judgment under Rule 60(b)(4) and 60(b)(1), or to amend the judgment under Rule 59(e). (21-cv-6704 (PKC), ECF 63, 68.)  In its briefing on this motion, ROH similarly argued that it was never properly a party to either the arbitration or confirmation proceedings.  The Court concludes that this motion is now moot, but the parties will be given the opportunity to be heard on this point.

The mootness doctrine is mandated by the "case or controversy" requirement in Article III of the United States Constitution, and requires that federal courts not adjudicate matters that no longer present an actual dispute between parties.  See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78 (1990).  A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969) (citation omitted).  When "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," the issue is moot. Los Angeles County v. Davis, 440 U.S. 625, 631 (1979) (citations and quotations omitted); see also, e.g., Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001).  As the Second Circuit noted in

---

[5] ROH's response to this point is that "res judicata does not apply since . . . the Republic cannot be bound by Harris Bricken's litigation conduct."  (ECF 33 at 28.)  As previously discussed, this Court is not empowered to disturb a state court judgment against ROH in the way it appears to suggest.

24

Catanzano  v. Wing, "[t]he central question . . . is constant—whether decision of a once living

dispute continues to be justified by a sufficient prospect that the decision will have an impact on

the parties."  277 F.3d 99, 107 (2d Cir. 2001) (citing Charles Alan Wright, Arthur R. Miller &

Edward H. Cooper, 13A Federal Practice & Procedure § 3533 (2d ed.1984)).

> The Partial Final Award, as confirmed by this Court, was sought by PRH as an
"interim" measure aimed to protect a potential final award.  (See, e.g., 21-cv-6704 (PKC), ECF
5-1 ("Partial Final Award") ¶ 7; Final Award ¶ 38.)  It required respondents to deposit
$23,043,429.79 into an escrow account to serve as "pre-award security for PRH's claims in the
arbitration."  (Partial Final Award ¶ 119.)  The Final Award later determined that ROH and
BMPAD are joint and severally liable for $28,184,756.65, plus any interest that accrues on
whatever portion remains unpaid.  (Final Award at p. 75.)

> After confirmation of the Final Award, the dispute over interim, "pre-award"
security obligations will no longer be "live."  The amount that ROH had previously been
required to deposit in escrow has now been subsumed into the greater sum it is liable for in the
Final Award.  Granting ROH the relief it seeks regarding the Partial Final Award judgment
would not impact its obligations to PRH.

> ROH separately argues that a judgment confirming the Final Award must be
"offset" by the amount referenced in the Partial Final Award.  (ECF 33 at 35.)  As discussed
above, ROH is incorrect—the Partial Final Award granted pre-award security to be placed in an
escrow account, which would be available for use in satisfying the Final Award.  This is not a
requirement that ROH pay twice, as it suggests.

> The parties will be given 14 days from the date of this Order to show cause why
the motion ought not be denied as moot.

SPA-26

CONCLUSION

       The Court has considered all the arguments of the parties, whether or not they are expressly referenced here.  The petition to recognize, confirm, and enforce the Final Award of August 23, 2022 as against BMPAD and ROH is GRANTED.  The cross-motion to dismiss the petition, or in the alternative, to vacate the arbitration award is DENIED.

       Within 7 days of this Order, PRH shall submit (1) a declaration from counsel regarding the total amount, inclusive of interest, owed under the terms of the Final Award as of the date of this Order and (2) a proposed final judgment reflecting the foregoing.  Respondents will have 3 days from submission of the proposed final judgment to respond.

       On Docket 21-cv-6704, the parties shall show cause within 14 days of this Order why the motion for relief from judgment, or alternately to amend the judgment, ought not be denied as moot.

       SO ORDERED.

                            P. Kevin Castel
                       United States District Judge

Dated:  New York, New York
         June 29, 2023

SPA-27

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
PREBLE-RISH HAITI, S.A.                              :
                                                               :
                                    Petitioner,     :
                                                               :            22-cv-7503 (PKC)
        - against -                                 :
                                                               :
                                                               :            Related cases:
                                                               :            21-cv-4960 (PKC)
REPUBLIC OF HAITI, BUREAU DE MONÉTISATION            :            21-cv-6704 (PKC)
DE PROGRAMMES D'AIDE AU DÉVELOPPEMENT,               :            21-cv-9040 (PKC)
                                                               :
                                                               :            **FINAL**
                                    Respondents     :            **JUDGMENT**
---------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        WHEREAS on June 29, 2023, the Court issued an Opinion and Order that granted

Preble-Rish Haiti, S.A.'s ("PRH") petition to recognize, confirm, and enforce the Final Award of

an international arbitration panel dated August 23, 2022, in the amount of $28,184,756.65, as

against respondents the Republic of Haiti ("ROH") and the Bureau de Monétisation des

Programmes d'Aide au Développement ("BMPAD") (ECF 51.);

        WHEREAS counsel for PRH, as directed by the Court, has submitted a

declaration calculating the pre-judgment interest due under the terms of the Final Award as

$2,891,640.20 through the date of the Court's Order confirming the award (21-cv-6704 (PKC),

ECF 117-1.), and respondents have made no objections to the calculation of pre-judgment

interest (ECF 55.);

        WHEREAS there are no outstanding issues requiring the Court's resolution;

SPA-28

NOW THEREFORE, pursuant to Rule 58, Fed. R. Civ. P., and upon all of the rulings and proceedings in this matter, the Court hereby enters Final Judgment in accordance with its prior Opinions, Orders, and rulings, and awards PRH judgment against ROH and BMPAD, jointly and severally, in the total amount of **$31,076,396.85**, consisting of $28,184,756.65 plus pre-judgment interest in the amount of $2,891,640.20.  Post-judgment interest shall accrue on the Final Judgment by operation of law at the federal rate.  28 U.S.C. § 1961.

Funds actually paid to PRH as a result of an attachment or garnishment by PRH pursuant to the Judgment in 21-cv-6704 (PKC), including $4,408,751.00 currently in the registry of the United States District for the Southern District of Texas, Docket 4:21-cv-1953, shall be applied toward satisfaction of this Final Judgment.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        July 19, 2023

2

SPA-29

United States Code Annotated
   Title 9. Arbitration (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 9

§ 9. Award of arbitrators; confirmation; jurisdiction; procedure

Currentness

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

**CREDIT(S)**

(July 30, 1947, c. 392, 61 Stat. 672.)

9 U.S.C.A. § 9, 9 USCA § 9
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 9. Arbitration (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 10

§ 10. Same; vacation; grounds; rehearing

Effective: May 7, 2002

Currentness

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

   **(1)** where the award was procured by corruption, fraud, or undue means;

   **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

   **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

   **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

**(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

**CREDIT(S)**

(July 30, 1947, c. 392, 61 Stat. 672; Pub.L. 101-552, § 5, Nov. 15, 1990, 104 Stat. 2745; Pub.L. 102-354, § 5(b)(4), Aug. 26, 1992, 106 Stat. 946; Pub.L. 107-169, § 1, May 7, 2002, 116 Stat. 132.)

9 U.S.C.A. § 10, 9 USCA § 10
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

SPA-31

§ 1604. Immunity of a foreign state from jurisdiction, 28 USCA § 1604

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part IV. Jurisdiction and Venue (Refs & Annos)
         Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1604

§ 1604. Immunity of a foreign state from jurisdiction

Currentness

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

**CREDIT(S)**

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892.)

28 U.S.C.A. § 1604, 28 USCA § 1604
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

**End of Document** <span style="float:right">© 2023 Thomson Reuters. No claim to original U.S. Government Works.</span>

§ 1605. General exceptions to the jurisdictional immunity of a..., 28 USCA § 1605

---

United States Code Annotated
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part IV. Jurisdiction and Venue (Refs & Annos)
            Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1605

§ 1605. General exceptions to the jurisdictional immunity of a foreign state

Effective: December 16, 2016
Currentness

**(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

**(1)** in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

**(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

**(3)** in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

**(4)** in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

**(5)** not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

**(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

**(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

---

**(6)** in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**(b)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That--

**(1)** notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

**(2)** notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

**(c)** Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

**(d)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

[**(e), (f)** Repealed. Pub.L. 110-181, Div. A, Title X, § 1083(b)(1)(B), Jan. 28, 2008, 122 Stat. 341.]

**(g) Limitation on discovery.--**

**(1) In general.--(A)** Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A or section 1605B, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

**(B)** A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

**(2) Sunset.--(A)** Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

**(B)** After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would--

  **(i)** create a serious threat of death or serious bodily injury to any person;

  **(ii)** adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

  **(iii)** obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

**(3) Evaluation of evidence.--**The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

**(4) Bar on motions to dismiss.--**A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

**(5) Construction.--**Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

**(h) Jurisdictional immunity for certain art exhibition activities.--**

  **(1) In general.--**If--

SPA-35

**(A)** a work is imported into the United States from any foreign state pursuant to an agreement that provides for the temporary exhibition or display of such work entered into between a foreign state that is the owner or custodian of such work and the United States or one or more cultural or educational institutions within the United States;

**(B)** the President, or the President's designee, has determined, in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)), that such work is of cultural significance and the temporary exhibition or display of such work is in the national interest; and

**(C)** the notice thereof has been published in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)),

any activity in the United States of such foreign state, or of any carrier, that is associated with the temporary exhibition or display of such work shall not be considered to be commercial activity by such foreign state for purposes of subsection (a)(3).

**(2) Exceptions.--**

**(A) Nazi-era claims.--**Paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--

**(i)** the property at issue is the work described in paragraph (1);

**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a covered government during the covered period;

**(iii)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

**(iv)** a determination under clause (iii) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(B) Other culturally significant works.--**In addition to cases exempted under subparagraph (A), paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--

**(i)** the property at issue is the work described in paragraph (1);

**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a foreign government as part of a systematic campaign of coercive confiscation or misappropriation of works from members of a targeted and vulnerable group;

**(iii)** the taking occurred after 1900;

**(iv)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

**(v)** a determination under clause (iv) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(3) Definitions.**--For purposes of this subsection--

**(A)** the term "work" means a work of art or other object of cultural significance;

**(B)** the term "covered government" means--

**(i)** the Government of Germany during the covered period;

**(ii)** any government in any area in Europe that was occupied by the military forces of the Government of Germany during the covered period;

**(iii)** any government in Europe that was established with the assistance or cooperation of the Government of Germany during the covered period; and

**(iv)** any government in Europe that was an ally of the Government of Germany during the covered period; and

**(C)** the term "covered period" means the period beginning on January 30, 1933, and ending on May 8, 1945.

## CREDIT(S)

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub.L. 100-640, § 1, Nov. 9, 1988, 102 Stat. 3333; Pub.L. 100-669, § 2, Nov. 16, 1988, 102 Stat. 3969; Pub.L. 101-650, Title III, § 325(b)(8), Dec. 1, 1990, 104 Stat. 5121; Pub.L. 104-132, Title II, § 221(a), Apr. 24, 1996, 110 Stat. 1241; Pub.L. 105-11, Apr. 25, 1997, 111 Stat. 22; Pub.L. 107-77, Title VI, § 626(c), Nov. 28, 2001, 115 Stat. 803; Pub.L. 107-117, Div. B, § 208, Jan. 10, 2002, 115 Stat. 2299; Pub.L. 109-304, § 17(f) (2), Oct. 6, 2006, 120 Stat. 1708; Pub.L. 110-181, Title X, § 1083(b)(1), Jan. 28, 2008, 122 Stat. 341; Pub.L. 114-222, § 3(b) (2), Sept. 28, 2016, 130 Stat. 853; Pub.L. 114-319, § 2(a), Dec. 16, 2016, 130 Stat. 1618.)

Notes of Decisions (1172)

28 U.S.C.A. § 1605, 28 USCA § 1605
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

SPA-37

§ 1605. General exceptions to the jurisdictional immunity of a..., 28 USCA § 1605

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

§ 1608. Service; time to answer; default, 28 USCA § 1608

---

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
     Part IV. Jurisdiction and Venue (Refs & Annos)
       Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1608

§ 1608. Service; time to answer; default

Currentness

**(a)** Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

  **(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

  **(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

  **(3)** if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

  **(4)** if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

**(b)** Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

  **(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

---

§ 1608. Service; time to answer; default, 28 USCA § 1608

**(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

**(3)** if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

**(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

**(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

**(C)** as directed by order of the court consistent with the law of the place where service is to be made.

**(c)** Service shall be deemed to have been made--

**(1)** in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

**(2)** in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

**(d)** In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

**(e)** No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

**CREDIT(S)**

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2894.)

Notes of Decisions (300)

28 U.S.C.A. § 1608, 28 USCA § 1608
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

§ 1608. Service; time to answer; default, 28 USCA § 1608

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

SPA-41

United States Code Annotated
　　Title 28. Judiciary and Judicial Procedure (Refs & Annos)
　　　Part V. Procedure
　　　　Chapter 115. Evidence; Documentary (Refs & Annos)

28 U.S.C.A. § 1738

§ 1738. State and Territorial statutes and judicial proceedings; full faith and credit

Currentness

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 947.)

28 U.S.C.A. § 1738, 28 USCA § 1738
Current through P.L. 118-19. Some statute sections may be more current, see credits for details.

**End of Document**　　　　　　　　　　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW　© 2023 Thomson Reuters. No claim to original U.S. Government Works.　　　1

§ 7503. Application to compel or stay arbitration; stay of action;..., NY CPLR § 7503

McKinney's Consolidated Laws of New York Annotated
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 75. Arbitration (Refs & Annos)

McKinney's CPLR § 7503

§ 7503. Application to compel or stay arbitration; stay of action; notice of intention to arbitrate

Currentness

(a) Application to compel arbitration; stay of action. A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court. If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.

(b) Application to stay arbitration. Subject to the provisions of subdivision (c), a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502.

(c) Notice of intention to arbitrate. A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time. Such notice or demand shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded. Notice of such application shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. Service of the application may be made upon the adverse party, or upon his attorney if the attorney's name appears on the demand for arbitration or the notice of intention to arbitrate. Service of the application by mail shall be timely if such application is posted within the prescribed period. Any provision in an arbitration agreement or arbitration rules which waives the right to apply for a stay of arbitration is hereby declared null and void.

**Credits**
(L.1962, c. 308. Amended L.1964, c. 388, § 28; L.1973, c. 1028, § 1.)

McKinney's CPLR § 7503, NY CPLR § 7503
Current through L.2023, chapters 1 to 533. Some statute sections may be more current, see credits for details.

                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    1

§ 7511. Vacating or modifying award, NY CPLR § 7511

---

McKinney's Consolidated Laws of New York Annotated
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 75. Arbitration (Refs & Annos)

McKinney's CPLR § 7511

§ 7511. Vacating or modifying award

Currentness

(a) When application made. An application to vacate or modify an award may be made by a party within ninety days after its delivery to him.

(b) Grounds for vacating.

1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

2. The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:

(i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or

(ii) a valid agreement to arbitrate was not made; or

(iii) the agreement to arbitrate had not been complied with; or

(iv) the arbitrated claim was barred by limitation under subdivision (b) of section 7502.

---

SPA-44

§ 7511. Vacating or modifying award, NY CPLR § 7511

(c) Grounds for modifying. The court shall modify the award if:

1. there was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award; or

2. the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

3. the award is imperfect in a matter of form, not affecting the merits of the controversy.

(d) Rehearing. Upon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator appointed in accordance with this article. Time in any provision limiting the time for a hearing or award shall be measured from the date of such order or rehearing, whichever is appropriate, or a time may be specified by the court.

(e) Confirmation. Upon the granting of a motion to modify, the court shall confirm the award as modified; upon the denial of a motion to vacate or modify, it shall confirm the award.

**Credits**
(L.1962, c. 308.)

McKinney's CPLR § 7511, NY CPLR § 7511
Current through L.2023, chapters 1 to 533. Some statute sections may be more current, see credits for details.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.